### STRINGER v. UNITED STATES.
### No. 47642.

United States Court of Claims.
May 1, 1950.

---

5. 72 A.L.R. 1049–1059; Lemoine v. Alkan, 1916, 33 Phillippine 162.

Edmund E. Pendleton, Jr., Washington, D. C., Culbertson, Aitchison & Briggs, Washington, D. C., on the briefs, for plaintiff.

John R. Franklin, Washington, D. C., H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This is a suit to recover the difference in pay between Grades CAF–13 and CAF–12, after September 16, 1944, on the ground that plaintiff's reduction in grade on September 16, 1944, did not comply with the requirements of the Veterans' Preference Act.

Plaintiff is a veteran entitled to the civil service benefits of the Veterans' Preference Act of 1944, 58 Stat. 387, 5 U.S.C.A. § 851 et seq. On April 1, 1944, plaintiff, employed in the Dallas office of the Corps of Engineers, was promoted from Grade CAF–12, $4,600 per annum, to Grade CAF–13, $5,600 per annum. The legality of this promotion is not in question. By stipulation, signed by representatives of both parties, it is agreed that plaintiff was promoted under a reallocation of the position as determined by the personnel Classification Analyst of the Southwestern Division. On March 6, 1944, the Army Service Forces, Office of the Chief of Engineers, issued an order stating that "full authority for the allocation and reallocation of all graded positions is delegated to Division Engineers." Plaintiff for some months was duly paid on the basis of this promotion. In fact, the defendant concedes the promotion in its brief.

While making this concession, however, the defendant asserts its right to reduce the grade and claims that in later reducing plaintiff's grade it substantially complied with the procedural requirements.

The issue, then, narrows to whether in reducing plaintiff's classification, there was

substantial compliance with the provisions of the Veterans' Preference Act.

On July 28, 1944, the Chief of Engineers requested justification from the Division Engineer for the allocation of plaintiff's position to CAF–13. Dissatisfied with the reply, the Office of the Chief of Engineers, on August 11, 1944, instructed that the position of Chief of the Claims Branch, which was plaintiff's position, be reduced immediately to CAF–12 and that plaintiff be reduced in salary accordingly. Plaintiff's protest that he was entitled under the Veterans' Preference Act to thirty days' advance notice of such proposed action resulted in his being informed, on August 17, that his reduction to CAF–12, salary $4,600 per annum, would be effective September 16. Plaintiff's further protest that this notice did not comply with the act was overruled by the Army Service Forces on August 31. On September 15 plaintiff appealed to the Regional Director of the Civil Service Commission in Dallas. This appeal was denied on September 22. On May 3, 1945, plaintiff requested the Regional Director of the Civil Service Commission to reconsider his decision and also requested an opportunity to appear before a representative of the Commission if a favorable ruling could not be made on the basis of his written statement. The Regional Director, regarding this letter as an appeal from his finding of September 22, 1944, forwarded it to the Board of Appeals and Review of the Commission in Washington without acting on plaintiff's request for an opportunity to appear. The Board approved the Regional Directors' decision. During further correspondence with Commission officials plaintiff contended that the Act gave him a right to a hearing. He was told that if he desired to come to Washington at his own expense the Board would schedule a hearing. Plaintiff did not desire to go to Washington at his own expense and requested that instead a hearing be scheduled before the Regional Director in Dallas. Plaintiff was then informed, on February 14, 1946, that since he had not availed himself of the right to appear personally in connection with his original appeal and since he did not desire to appear in Washington, the Commission considered his case closed. Plaintiff is before us claiming the difference between the compensation he has actually received as a CAF–12 since September 16, 1944, and the compensation he would have received as a CAF–13. The Comptroller General has disallowed plaintiff's claim. 24 Op.Comp. Gen. 709.

Plaintiff's demotion was not lawful unless it complied with Section 14 of the Veterans' Preference Act, 58 Stat. 390. See 40 Op.Atty.Gen. 510.[1] Section 14 provides: "No * * * preference eligible * * * shall be * * * reduced in rank or compensation * * * except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose * * * reduction in rank or compensation is sought shall have at least thirty days' advance written notice * * * stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer, and shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting, such appeal to be made in writing within a reasonable length of time after the date of receipt of notice of such adverse decision * * * such preference eligible shall have the right to make a personal appearance, or an appearance through a designated representative, in accordance

---

1. Plaintiff would also invoke Section 6 of the act of August 24, 1912, 37 Stat. 555, 5 U.S.C.A. § 652. This act seems to us inapplicable, however, since it is concerned only with removals from the civil service. In any event, the 1944 act, which applies to veterans, provides greater rights than the 1912 act, which applies to all employees. Nor can plaintiff rely on the act of August 23, 1912, 37 Stat. 413, 5 U.S.C.A. § 648, prohibiting the discharge or demotion of veterans in the event of a reduction in force. No reduction in force was involved here. For the same reason, plaintiff cannot invoke Section 12 of the 1944 act, 58 Stat. 390.

with such reasonable rules and regulations as may be issued by the Civil Service Commission; after investigation and consideration of the evidence submitted,. the 'Civil Service Commission' shall submit its findings and recommendations to the proper administrative officer and shall send copies of the same to the appellant or to his designated representative: * * *." [2]

We must decide whether the reduction in plaintiff's rank and compensation conformed to the procedural requirements of Section 14.[3] We hold that it did not.

▇▇ We hold that plaintiff did not receive "at least thirty days' advance written notice" as required by the act. He received notice on August 17, 1944, informing him that "effective 16 September 1944, the grade and salary of your position will be reduced." In computing the thirty-day period, the day on which the notice was given is regarded as an entirety, or a point of time, and is excluded. Burnet v. Willingham Loan & Trust Co., 282 U.S. 437, 51 S.Ct. 185, 75 L.Ed. 448; Smith v. Gale, 137 U.S. 577, 11 S.Ct. 185, 34 L.Ed. 792; Freeman v. Pew, 61 App.D.C. 223, 59 F.2d 1037; In re Schmidt, D.C., 54 F.Supp. 262; United States v. Barber, D.C., 24 F.Supp. 229; Sartor v. United Gas Public Service Co., D.C., 20 F.Supp. 660; Wheeler v. Lumbermen's Mutual Casualty Co., D.C., 6 F.Supp. 532. Furthermore, thirty *full* days of notice are required; and the period of notice therefore had to extend to the last minute of the thirtieth day, which was September

.16.' See International Manufacturers' Co. v. United States, 85 Ct.Cl. 683, certiorari denied, 303 U.S. 651, 58 S.Ct. 749, 82 L.Ed. 1111; Merritt v. Thompson, 53 App.D.C. 233, 289 F. 631; MacCrone v. American Capital Corporation, D.C., 51 F.Supp. 462; Zoby v. Kosmadakes, D.C.Mun.App., 61 A. 2d 618. We infer that this is also the Civil Service Commission's interpretation.[4] "The advance notice * * * shall be submitted ·to the employee *at least thirty (30) days before the effective day of such* proposed action * * *." [Emphasis supplied.] 5 C.F.R., 1949 Ed., 22.2(a); 5 C.F.R., 1944 Supp., 22.2(c). Notice of proposed action may be defective because "* * * the period of required advance notice is *less than (30) days* * * *." [Emphasis supplied.] · 5 C.F.R., 1944 Supp., 22.4(a). "The employee must be given written notice * * * *at least 30 days before the effective date of such action* * * *." [Emphasis supplied.] United States Civil Service Commission, Federal Personnel Manual, p. S 1–28, May 2, 1949. And see the sample notice of proposed reduction. Ibid., p. S 1–31. Counting August 18 as the first day of the notice period, plaintiff's reduction was made effective at the beginning of the thirtieth day—the pay he received for September 16 was the pay of a CAF-12. Plaintiff, therefore, was not given the required thirty full days' notice in advance of his demotion.

▇▇ It makes no difference that plaintiff knew of the Chief of Engineers' in-

2. Later legislation made the Commission's recommendations mandatory. 61 Stat. 723.

3. Regulations issued by the Civil Service Commission governing appeals under Section 14 of the Veterans' Preference Act are found in Part 22 of Title 5 of the Code of Federal Regulations. The Commission's present regulations provide for Part 22 to apply to appeals such as plaintiff's. 5 C.F.R.1949 Ed., 9.102 (4). There is room for doubt, however, as to when these regulations were first specifically made applicable to such cases. See 5 C. F. R., 1944 Supp. 22.1 (b) and 22.1 (d); 5 C. F. R., 1946 Supp., 22.1 (d); 5 C. F. R., 1947 Supp., 9.102 (2); 5 C. F. R., 1949 Ed., 9.102 (4). However, the Commission had not yet issued

any regulations governing appeals under Section 14 when plaintiff first appealed to the Regional director. Part 22 did not appear until a month later. But see infra, n. 5. The procedure prescribed by Section 14 had, of course, to be followed regardless of whether regulations had been issued by the Commission; for the Act became law on June 27, 1944, over a month before plaintiff's demotion.

4. · The Commission's interpretation of Section 14, as indicated by its eventually issued regulations governing action under · that Section, is entitled to great weight in the determination of what that Section requires. Great Northern R. Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836.

struction before August 17; formal written notice was required and that was not given until August 17. Nor does it matter that plaintiff had time to write to the Division Engineer and to the Regional Director of the Civil Service Commission; the law requires not merely that there be time to answer but that there be thirty full days of notice. Nor can defendant rely on plaintiff's statement in his August 18 letter to the Division Engineer that he had been given the required thirty days' notice: "The procedural requirements of section 14 of the Veterans' Preference Act, on which Part 22 of the Commission's regulations is based, established fixed rights, and there is no provision in the section as to waiver." United States Civil Service Commission, op. cit., p. S 1–27. Nor can we accept defendant's contentions that plaintiff must show wherein he was harmed by the insufficiency of the notice period and that the doctrine of *de minimis non curat lex* applies here. We cannot construe a statute that plainly says "at least thirty days" as meaning "not quite thirty days." The requirements of Section 14 are specific and mandatory. Neither this court, nor the Civil Service Commission, nor the Chief of Engineers can disregard them. Strict compliance is required. Lamb v. United States, Ct.Cl., 90 F.Supp. 369; Gadsden v. United States, 78 F.Supp. 126, 111 Ct.Cl. 487; Wittner v. United States, 76 F.Supp. 110, 110 Ct.Cl. 231; Elchibegoff v. United States, 106 Ct.Cl. 541.

We reject plaintiff's contention that the notice of August 17 did not state "* * * any and all reasons, specifically and in detail * * *" for his demotion. That notice and its inclosures did state reasons as specifically and in as much detail as could be expected in this type of personnel action. Cf. United States Civil Service Service Commission, op. cit., p. S 1–28. But we do fail to see how that notice can be regarded as a notice of *proposed* reduction within the meaning of the Act. Section 14 contemplates two separate and distinct notices—a notice of proposed adverse action and a notice of adverse decision. United States Civil Service Commission, op. cit., p. S 1–28. The notice of

August 17 added nothing to the Chief of Engineers' instruction of August 11 beyond changing the time at which plaintiff's reduction would become effective from "immediately" to September 16. Its tenor was not of action proposed but of action already decided upon. Cf. Elchibegoff v. United States, supra. Although it informed plaintiff that he might appeal under existing War Department regulations, it did not inform him of his right, under Section 14, to answer personally and in writing and to furnish affidavits in support of his answer. Cf. United States Civil Service Commission, op. cit., p. S 1–31. There is no indication that any fresh consideration was given to the matter of plaintiff's demotion following his protests. Nor did plaintiff ever receive anything that could be regarded as a notice of adverse decision. On September 7, 1944, he received a form, Notification of Personnel Action, informing him that he would be demoted to CAF–12, effective September 16. This was not the notice of adverse decision required by Section 14. It was delivered before the period of advance notice had expired. It did not represent a decision made after consideration of the Department's proposal and the employee's answer. It represented merely the next step in the process, already begun, for reducing plaintiff's grade. The procedure set out in Section 14—notice of proposed action, answer, decision—was not followed. The conclusion is inescapable that the War Department was either unfamiliar with the provisions of the Veterans' Preference Act or else unaware that it had established a special procedure for demoting a preference eligible such as plaintiff. When that Act was called to the Department's attention—by plaintiff himself it appears—an attempt was made to conform to it by postponing the effective date of the demotion until September 16. That was not enough. The War Department acted in substantial disregard of Section 14.

We hold further that the Civil Service Commission failed to comply with the Act. Section 14 provides that the veteran "shall have the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer" and "shall

have the right to make a personal appearance, or an appearance through a designated representative, in accordance with such reasonable rules and regulations as may be issued by the Civil Service Commission." Plaintiff has never appeared personally before the Commission or a Commission official. On September 15, 1944, he appealed to the Regional Director of the Commission. This resulted only in a written reply to the effect that the War Department had complied with the regulations promulgated under the Veterans' Preference Act.[5] Plaintiff was not informed that he might make a personal appearance; he was merely informed that he had been properly demoted. Later, on May 3, 1945, he requested the Regional Director to reconsider this ruling and allow him to appear in person if a favorable decision could not be made on the basis of his written statement. The Regional Director considered this letter an appeal from his former decision and forwarded it to the Commission in Washington. This touched off a correspondence between plaintiff and the Commission which culminated in the Commission's informing plaintiff, in effect, that he could appear in Washington, making the trip at his own expense, or not at all. This was not in accord with the usual procedure.

■ We do not suggest that the Chief of Engineers lacked the power to demote plaintiff; on the contrary, Section 14 of the Veterans' Preference Act clearly implies that veterans can be reduced in rank or compensation. However, Section 14 prescribes just as clearly that such reduction can be accomplished only in a certain way. In the absence of a showing of bad faith on the part of the officials effecting it, we would not review a demotion accomplished in the prescribed way. What we decide here is that plaintiff's reduction was not accomplished in the prescribed way. Plaintiff did not receive at least thirty full days' notice of proposed adverse action; he did not receive separate notices of proposed adverse action and of adverse decision; he was denied his right to appear personally on appeal to the Civil Service Commission. The procedural requirements of Section 14 were substantially ignored. We hold that plaintiff's demotion was ineffective; therefore, he is entitled to recover.

It seems rather strange that department officials are sometimes reluctant to follow the simple requirements of an Act of Congress. Perhaps it is pride in a decision already rendered, or a desire not to acknowledge a mistake. At any rate, they sometimes seem to acknowledge the necessity of a concession grudgingly rather than openly and willingly, to make the barest sort of correction rather than a real compliance.

There is nothing ambiguous about the Veterans' Preference Act. Rightly or wrongly, it was enacted by the Congress in recognition of the great sacrifices of those who had an active part in our national defense at times when everything we cherish was at stake.

The Congress is the policy-making branch of our government. It said plaintiff should have at least thirty days' notice. The War Department gave him twenty-nine. Why? We have no doubt the official thought he was allowing exactly thirty days. But in his efforts to give not an ounce more than was necessary, he sliced the ham too thin. Then, too, the law requires the privilege of a personal appearance on appeal to the Civil Service Commission. This was not granted; and when it was belatedly allowed, it was after a decision and in such a way as to say, "Oh, well, if we must listen to you, pay your own expenses, come up to Washington and we'll hear you; but see how far you get." There was manifestly no genuine compliance.

5. The Regional Director apparently had reference to regulations, which had been issued at that time, governing reductions in force. 5 C. F. R., 1944 Supp. 12. Regulations governing appeals from administrative decisions to reduce in rank or compensation for reasons other than reduction in force were not issued until some time after the Regional Director had acted on plaintiff's appeal. Supra, n. 3.

These were not little matters. They are of vast concern to the great array of veterans who at least are entitled to a good-faith compliance with the rights granted by a grateful people through their Congress. We cannot set the pattern of trimming away these rights.

We dislike to give judgment for the amount involved in this case. The Chief of Engineers had a perfect right to reduce plaintiff's classification. It would have been simple and easy to concede plaintiff his full rights, listen to his story, and then—if convinced it was proper to do so—make the reduction. Such reduction would have been effective in every way.

Plaintiff is entitled to recover the difference between the amount he has actually received from September 16, 1944, to the date of judgment and the amount he would have received during that period if he had not been demoted. The entry of judgment, however, will be suspended pending the filing of a stipulation by the parties showing the exact amount of the judgment to be awarded plaintiff, computed in accordance with the opinion of the court. It is so ordered.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.