**Arthur B. DAUB**

v.

**UNITED STATES.**

No. 533–59.

United States Court of Claims.

July 19, 1961.

Arthur B. Daub, pro se.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. William H. Orrick, Jr., for defendant.

MADDEN, Judge.

Prior to July 30, 1956, the plaintiff was on the Civil Service register for Food Specialist, GS-7 (Options: Institutional Feeding, Equipment and Preservation). The register for these positions expired on June 30, 1956. After that the plaintiff was on no Civil Service register. However, on July 30, 1956, he was given a "Temporary Appointment—PER" (Pending Establishment of a Register) to the position of Inspector (Non-Perishable Subsistence Supplies), GS-7, at the New York Quartermaster Market Center, Department of the Army. He was removed from this position, the title of which in the meantime had been changed to "Preserved Food Inspector", on July 22, 1957, on the charge that he had refused to obey orders.

After proceedings which will be described hereinafter, the plaintiff was restored to his position on January 19, 1959, but he was not paid for the period between his discharge and his reinstatement.

After his discharge, the plaintiff resorted to various administrative reviews, without avail. He commenced an action in the United States District Court for the District of Columbia. No answer was filed on behalf of the Army, and the United States Attorney made a motion that the matter be remanded to the Army for further administrative action. The court granted that motion. The Army thereupon granted the plaintiff a grievance hearing. The Government's representative conceded before the Grievance Committee that the plaintiff's removal was unwarranted and illegal and was contrary to the Army's personnel regulations. The Army's letter advising him of his reinstatement said:

"The complete case has been reviewed by the Grievance Committee of this installation and the Committee's recommendation to restore you to the position of Preserved Food Inspector, GS-1905-7, $4980 per annum is approved.

"It is felt that the disciplinary action taken was not in consonance with the Department of the Army recommended Table of Penalties."

The plaintiff's reinstatement was effective as of January 19, 1959. He was placed upon the payroll as a new employee without retroactive pay or step increases, and he was denied seniority rights.

Section 900-57-20 of the Manual of Depot Operating Procedures provided:

"All actions will be based on the following principles:

"1. Fair and impartial treatment.

"2. Like penalties for like offenses.

"3. Use of Table of Standard Penalties.

\*    \*    \*    \*    \*    \*

"6(a). A removal is a permanent separation of an employee, and will be used when such action is based

on an employee's willful action or upon carelessness beyond reasonable excuse. The action will be applied regardless of whether the employee occupies a temporary or permanent position and will be in accordance with Table of Standard Penalties (Appendix A).

\* \* \* \* \* \*

"7(c). It is the policy of the Department of the Army to afford maximum protection to its employees against arbitrary or unfair action. The circumstances surrounding separation actions will always be completely investigated and made a matter of record before any action is initiated.

"Table of Standard Penalties (Appendix A):

"The following table of penalties for delinquency or misconduct will be used as a guide in imposing disciplinary action to assure like penalties for like offenses throughout the Depot. It is extremely important that the principle of like treatment be adhered to.

"This list of offenses and penalties set forth below may not successfully meet the demands of all situations, and it will be necessary for supervisors to use judgment in determining proper action for violations not covered. Final decision as to the action to be taken will rest with the responsible supervisor. \* \* \*

"Offenses—Insubordination (Refusal to Obey Orders, Impertinence, Like Offenses)

"1st offense—Official written reprimand

"2nd offense—3 day suspension

"3rd offense—5 day suspension or removal."

The offense charged against the plaintiff was a refusal to obey an order to travel. It was his first offense. According to the table, the standard penalty suggested by the Army for that offense was an official written reprimand. The penalty actually imposed was the plaintiff's discharge.

The Government argues, correctly, that the table of penalties was intended to be a guide to administrative officers, and not an immutable schedule. But the regulation containing the table had a spirit, as well as a body, and the spirit of fair treatment would hardly have authorized the officer who was applying the regulation to substitute the extreme penalty, discharge, for the lightest penalty, reprimand, unless the case at hand was a most extraordinary one.

In the instant case the Army, after having refused the plaintiff any administrative relief, surrendered quite abjectly when it was taken to court. It asked the court for another chance to right its wrong; being given that chance it confessed its wrong, and reinstated the plaintiff to his position.

The picture which emerges seems to be that of a reckless and unjust decision, made by a subordinate officer, but, having been made, stubbornly adhered to until the prospect of having to defend it in court loomed up. Only then did the more responsible officials of the Army and the Government put their minds on the problem. They had had, in the meantime, other things to do, but, by contrast, the plaintiff had been deprived of his job and his pay.

The Army's conduct in the instant case was a violation of its regulation. Its conduct may properly be characterized as arbitrary and capricious. Those who wrote the regulation did not authorize such an application of it. On the contrary, they forbade it. The gross misapplication of the regulation did not accomplish the plaintiff's discharge and he is entitled to the relief for which he sues. Knotts v. United States, 121 F. Supp. 630, 128 Ct.Cl. 489.

The Government points out that the plaintiff was a temporary employee who had no status either in the competitive civil service, or as a veteran. But, as we have shown, the Army had, by regulation, conferred upon its employees, in-

cluding its employees who had no rights under the Lloyd-La Follette Act, 5 U.S. C.A. § 652 or the Veterans' Preference Act, 5 U.S.C.A. § 851 et seq., the right to prescribed rational and uniform treatment with regard to their status as employees. The Government does not contend that these regulations were beyond the powers of the Army. The doctrine of Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403, and of Watson v. United States, 142 Ct.Cl. 749, is applicable.

There is nothing novel about our awarding back pay to the plaintiff, although he was not covered by the back pay provision of the 1948 amendment of the Lloyd-La Follette Act. In the Knotts case, supra, the back pay statute was not applicable because the plaintiff had not been reinstated, yet the court awarded back pay. It has done the same in the long line of cases in which procedural requirements were not complied with. Examples are United States v. Wickersham, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798; Stringer v. United States, 90 F. Supp. 375, 117 Ct.Cl. 30.

The plaintiff's motion for summary judgment will be granted, and the defendant's similar motion will be denied. The plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c).

It is so ordered.

JONES, Chief Judge, and LARAMORE and DURFEE, Judges, concur.

WHITAKER, Judge (dissenting).

I think my brethren will commit a grave error, eventually involving large sums of money, if they persist in their present intention to hold that an employee, not in the classified civil service, may recover a judgment against the United States, on the sole ground that his discharge was not "in consonance" with the regulations of the Department by which he was employed. In the hope that I may convince them of the error of their ways, or, if not, that the Supreme Court may be persuaded to review the interpretation my brethren put on the decision in Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403, I file this dissenting opinion.

The majority apparently concedes that there has been no violation of the Lloyd-La Follette Act, as amended (5 U.S.C.A. § 652; 62 Stat. 354), or of the regulations of the Civil Service Commission promulgated pursuant thereto, but it says that plaintiff is entitled to recover a money judgment against the United States because the regulations of the War Department, prescribing the punishment to be inflicted for insubordination, were not complied with.

Such a holding gives a right of recovery to the employees of the War Department by decree of the head of the department alone, which has never been authorized by Congress. It gives to the thousands of employees of this department a right of recovery not enjoyed by the employees of other departments of the Government. It discriminates against all other Government employees. Or, if the War Department can afford its employees this protection, then the Treasury Department can adopt whatever regulation it thinks appropriate, the Commerce Department some other regulation, and so on throughout the 13 Departments and the 31 or more Independent Agencies of the Government. The result would be something less than uniformity in the rights of Government employees, something less than stability, dependent as they would be on the views of the various heads of departments and agencies, as they come and go.

Congress alone may consent to suit by employees of the Federal Government. Congress alone, either itself or through authorized agencies, may prescribe the conditions which must be met before such a suit may be brought. No head of a department has that right unless Congress has authorized him to exercise it. Congress has conferred on the Civil Service Commission, not the heads of the vari-

ous departments of the Government, the power to issue regulations to carry into effect the two Acts of Congress under which it has given employees of the Government the right to recover for a wrongful deprivation of pay.[1] These Acts are the Lloyd-La Follette Act, as amended, supra, and the Veterans' Preference Act (5 U.S.C.A. § 863, 58 Stat. 390). Neither of these Acts give to the heads of the various departments the right to prescribe regulations to carry their provisions into effect.

On July 27, 1897, prior to the passage of the Lloyd-La Follette Act and, therefore, before Congress had authorized suits against the Government by its employees, the President issued this Executive Order:

"No removal shall be made from any position subject to competitive examination, except for just cause, and upon written charges filed with the head of the department, or other appointing officer, and of which the accused shall have full notice, and an opportunity to make defense."

It was contended that the discharge of an employee in violation of this order gave rise to a cause of action against the United States. Justice Lurton, then Circuit Judge, had this to say of this contention:

"It is said that the civil service rules, so far as they deny the unrestrained power of removal, are not the law of the land, but are mere executive orders, dependent for their force upon the vigilence and earnestness of the chief executive in compelling his appointees to regard and obey regulations voluntarily imposed by him as a regulation by the appointing power of its otherwise unrestrained liberty of removal. To this contention I am constrained to yield my assent. These rules regulating the power of removal were made by the president, and may be repealed, altered, or amended at his pleasure. Prior to November 2, 1896, no such restraints existed; and, if after that date they came into force, it was alone by virtue of an executive order. Law is not thus enacted, altered, or amended. Law must be an expression of a rule of action by the legislative authority. These civil service rules, so far as they deal with the executive right of removal,—a right which is but an incident of the power of appointment,—are but expressions of the will of the president, and are regulations imposed by him upon his own action, or that of heads of departments appointed by him. He can enforce them by requiring obedience to them on penalty of removal. But they do not give to the employés within the classified civil service any such tenure of office as to confer upon them a property right in the office or place." Morgan v. Nunn, C.C., 84 F. 551, 553.

This opinion was followed by our court in Ruggles v. United States, 45 Ct.Cl. 86. To the same effect are Miller v. United States, 45 Ct.Cl. 509; Carr v. Gordon, C.C., 82 F. 373; Flemming v. Stahl, C.C., 83 F. 940; and Page et al. v. Moffett, 85 F. 38.

Unless Congress has given its consent that the sovereign may be sued because some regulation of a head of a department has not been complied with, the failure to comply with it gives the employee no right of action.

---

[1]. The Act of January 16, 1883 (22 Stat. 403), established the United States Civil Service Commission. In section 2 it was provided:

"That it shall be the duty of said commissioners:

"*First*. To aid the President, as he may request, in preparing suitable rules for carrying this act into effect, and when said rules shall have been promulgated it shall be the duty of all officers of the United States in the departments and offices to which any such rules may relate to aid, in all proper ways, in carrying said rules, and any modifications thereof, into effect."

This authority has resided in the Civil Service Commission ever since.

When the original Lloyd-La Follette Act was passed in 1912 (37 Stat. 555), it gave to an employee the right to appeal to the Civil Service Commission, if his agency failed to comply with the procedure set up by the Act and the regulations of the Civil Service Commission. On appeal to it, the Commission could review the procedure followed prior to discharge, and if it found the proper procedure had not been followed, it could recommend that the employee be restored to duty. Later it was made mandatory on the agencies to follow the decision of the Civil Service Commission. Then came the Act of June 10, 1948 (62 Stat. 354), amending the Lloyd-La Follette Act, which, for the first time, gave the employee the right to the pay he had lost by his wrongful discharge. A failure by the agency to give him what he was entitled to under the Act gave him the right to bring suit therefor in this court. But that Act gave the employee the right to sue for loss of pay only for the reasons set out therein. Those reasons were (a) a failure to follow the procedure prescribed, or (b) a violation of the Veterans' Preference Act, or (c) a wrongful removal in a reduction-in-force proceeding. For a violation of any one of these things, or of the regulations of the Civil Service Commission implementing the Act, an employee might bring suit for loss of pay. No right to sue was given for the failure to follow the regulations *of a department* with respect to the discharge of one of its employees.

The decision in Service v. Dulles, supra, did not depart from these principles. It only applied them to a different law and the regulations issued pursuant to it. Service v. Dulles held no more than that the regulations governing the discharge of employees in the State Department were applicable to discharges under the so-called McCarran Rider, authorizing the Secretary of State to discharge any employee of the State Department in his discretion, and that a failure to comply with them gave an employee a right of action for his wrongful discharge.[2]

That decision was not concerned with the Lloyd-La Follette Act. It was concerned alone with the McCarran Rider and Executive Order 9835, as amended by Executive Order 10241, 5 U.S.C.A. § 631 note, and the regulations issued pursuant thereto.

The McCarran Rider was applicable alone to the employees of the State Department. It gave to the Secretary of State the "absolute discretion, * * * [to] terminate the employment of any officer or employee of the Department of State or of the Foreign Service of the United States whenever he shall deem such termination necessary or advisable in the interests of the United States * * *." (65 Stat. 581.) The Secretary issued regulations, governing the administration of that Act and others applicable to the State Department employees, just as the Civil Service Commission has done with respect to the Lloyd-La Follette Act. The Court held, with respect to the McCarran Rider, just as it had previously done with respect to the Lloyd-La Follette Act, that a failure to comply with the regulations issued with respect to it gave an employee a right of action for his wrongful discharge.

But it must be borne in mind that these regulations were issued under an Act which gave to this particular Secretary, and to none other, the discretion to discharge the employees in the State Department and only in that Department. The McCarran Rider was applicable to no other department, and it gave to no other department head authority to issue regulations relative to the discharge of its employees. Service v. Dulles does not hold that the head of a department can extend the protection of the Lloyd-La Follette Act to employees not covered by it and the regulations of the Civil Service Commission issued pursuant to it.

2. Whether or not he had a right of action for loss of pay was not decided.

That is what the opinion of the majority in the instant case does: It extends the protection of the Lloyd-La Follette Act to employees not covered by it nor by the regulations of the Civil Service Commission issued pursuant to it. This is beyond the power, not only of the head of a department, but also of this court. Only Congress can do so.

The cases of Knotts v. United States, 121 F.Supp. 630, 128 Ct.Cl. 489, and Stringer v. United States, 90 F.Supp. 375, 117 Ct.Cl. 30, are not authority to the contrary. They hold no more than that an employee discharged in violation of the requirements of the Lloyd-La Follette Act, in one case, and of the Veterans' Preference Act, in the other, gives an employee a right of action against the United States. This is manifestly correct. These Acts were passed for the protection of employees, and, hence, a violation of them gave an injured employee a right of action.

So, also, where the regulations of the Civil Service Commission have been violated, because this Commission was authorized to issue regulations to carry into effect these two Acts enacted for the benefit of employees. But these Acts do not give the various department heads authority to issue additional regulations to carry the Acts into effect; only the Civil Service Commission is authorized to do so.

Therefore, if an employee has no right of action under these Acts or the regulations of the Civil Service Commission, as is conceded in this case, and relies alone on departmental regulations, which go beyond the Civil Service regulations, recovery must be denied, *because Congress has given no right to recover in such case.* Every right to recover a judgment against the United States must stem from an Act of Congress.

I regret I have been unable to convince my brethren. Perhaps the Supreme Court may be able to do so; or, if not convince them, it may direct them, anyway.