PENNSYLVANIA PUBLIC UTILITY COMMISSION et al., Plaintiffs,

City of Pittsburgh and City of Philadelphia, Intervening Plaintiffs,

v.

UNITED STATES of America, Interstate Commerce Commission and Penn Central Transportation Co., Defendants.

No. 69–280 Civil.

United States District Court,
M. D. Pennsylvania.

April 13, 1970.

Wilhelm E. Shissler, David C. Eaton, Donald A. Brinkworth, Harrisburg, Pa., for Penn Central Transportation Co.

John H. D. Wigger, Richard W. McLaren, U. S. Dept. of Justice, Washington, D. C., S. John Cottone, U. S. Atty., Scranton, Pa., for the United States.

Robert W. Ginnane, Jerome Nelson, Washington, D. C., for Interstate Commerce Commission.

Edward Munce, William A. Goichman, Harrisburg, Pa., Paul Silverstein, Philadelphia, Pa., for Pennsylvania Public Utility Commission.

Gordon P. MacDougall, Washington, D. C., Handler, Gerber & Widmer, Harrisburg, Pa., Gelb, Notarianni & Mullaney, Scranton, Pa., for plaintiffs.

Cyril A. Fox, Jr., Second Asst. City Solicitor, Pittsburgh, Pa., for City of Pittsburgh.

Edward G. Bauer, Jr., City Solicitor, Herbert Smolen, Asst. City Solicitor, Philadelphia, Pa., for City of Philadelphia.

Carl E. Van Dorn, Public Counsellor, State of Indiana, Indianapolis, Ind., for State of Indiana.

Paul W. Brown, Atty. Gen., Sheldon A. Taft, Gerald P. Wadkowski, Asst. Attys. Gen., Columbus, Ohio, for Public Utilities Commission of Ohio.

William J. Melvin, Columbus, Ohio, for City of Columbus.

George B. Tofaute, Terre Haute, Ind., for City of Terre Haute.

Keith E. Roberts, Chicago, Ill., for Maurice F. Radrizzi.

Nelson G. Grills, Indianapolis, Ind., for J. T. McNeal, George B. Lee, B. L. Dresbach, and J. H. Smith.

Thomas P. Shearer, Pittsburgh, Pa., for Cooperative Legislative Committee —Railroad Brotherhoods in Pennsylvania.

Before VAN DUSEN, Circuit Judge, and SHERIDAN and NEALON, District Judges.

## OPINION OF THE COURT

NEALON, District Judge.

This is an action filed July 18, 1969, to annul and set aside a July 11, 1969, decision[1] of the Interstate Commerce Commission (Commission), entered after hearing in a formal investigation conducted by the Commission, allowing Penn Central Transportation Company (hereinafter Penn Central) to discontinue two passenger trains, one operating daily in each direction between New York, New York, and St. Louis, Missouri. Plaintiffs and intervening plaintiffs are State agencies, municipalities and representatives of railroad labor organizations that were parties in opposition to the proposed train discontinuance in the Commission proceeding brought to this Court for review. Defendants are the United States of America, Interstate Commerce Commission, and Penn Central.

The Commission's decision was entered under Section 13a(1) of the Interstate Commerce Act, 49 U.S.C. § 13a (1), as the involved passenger trains operate from a point in one State to a point in another State. Chief Judge

1. Penn Central Co. Discontinuance of Trains, 334 I.C.C. 638 (1969). See paragraph 4 of Section IX of the Amended Complaint (Document 30) for the relief sought.

Sheridan, after hearing witnesses for plaintiffs and the railroad, entered a temporary restraining order the evening of July 18, 1969, preventing discontinuance of the trains.

A Three-Judge Court was duly convened. The railroad moved that the temporary restraining order be dissolved. Meanwhile, plaintiffs and intervening plaintiffs petitioned the Commission for reconsideration of the agency's report. After hearings, the motion to dissolve the temporary restraining order was denied.

The petition for reconsideration was denied by Division 3 of the Interstate Commerce Commission, acting as an Appellate Division, on September 19, 1969 (served September 23, 1969). Plaintiffs and intervening plaintiffs thereupon filed an amended complaint with this Court, and the agency's action became ripe for judicial review. 49 U.S.C. § 17(9).

Penn Central operates two pairs of trains daily in each direction between New York, New York, and St. Louis, Missouri. These two sets of trains are known as the "Penn Texas" (No. 3 westbound and No. 4 eastbound) and the "Spirit of St. Louis" (No. 31 westbound and No. 30 eastbound). The trains operate via intermediate points, such as Trenton, New Jersey; Philadelphia, Harrisburg and Pittsburgh, Pennsylvania; Columbus and Dayton, Ohio; Terre Haute and Indianapolis, Indiana and Effingham, Illinois, a distance of about 1,050 miles in each direction. Both trains have coaches, sleeping car, and dining car equipment.

The instant proceeding involves the proposed discontinuance of Train No. 3 (the westbound Penn Texas)' and Train No. 30 (the eastbound Spirit of St. Louis). Penn Central, or its predecessor, Pennsylvania Railroad Company, for a number of years has attempted to discontinue two of its four trains operating between St. Louis and New York. It first attempted to discontinue Trains Nos. 30 and 31 by a Section 13a(1) notice filed October 25, 1964. After hearing and decision in an investigation instituted by the Commission, discontinuance was denied and continued train operation required for the maximum one-year statutory period provided by Section 13a(1). Pennsylvania R. Co. Discontinuance of Trains, 328 I.C.C. 921 (1965). The second attempt to discontinue Trains Nos. 30 and 31 was likewise unsuccessful, the Commission again requiring continued operation for a year. Pennsylvania R. Co. Discontinuance of Trains, 330 I.C.C. 458 (1966). The carrier then proposed to discontinue Trains Nos. 3 and 30 by notice filed December 20, 1967, but subsequently withdrew its notice prior to the hearings. (Finance Docket No. 24873). The fourth attempt was also to discontinue Trains Nos. 3 and 30, and the Commission denied discontinuance after hearing and decision in its investigation. Penn Central Co. Discontinuance of Trains, 333 I.C.C. 736 (1968). This decision was by a divided two-to-one vote of the Commission's Division 3, and continued operation was ordered for a four-month period.

The fifth attempt, which resulted in the decision and order (see footnote 1 above) allowing discontinuance of the two trains, gives rise to this action. Penn Central filed its notice proposing discontinuance of the trains prior to 11:00 A.M. on February 18, 1969, stating that the discontinuance would become effective March 20, 1969, and setting forth a schedule of the trains which showed that the eastbound train started at 12:10 P.M. and the westbound train at 6:45 P.M.[2] The notice posted on

2. The decision of the Commission contains this paragraph concerning the posting, filing and serving of notices:
"Copies of the notice were posted on or before February 17, 1969, which also was the date of the railroad's supporting statement; however, the actual filing date (receipt date) at the Commission was February 18, a Tuesday. See our Rules of Practice, rule 4(b), 49 CFR 1100.4. Copies were served by mail upon the Governors and appro-

February 17, and filed with the Commission prior to 11:00 A.M. on February 18, reads as follows:

"Notice of Proposed
Discontinuance of Service

"Penn Central Company  \* \* \* has filed a notice with the Interstate Commerce Commission of its intention to discontinue passenger trains No. 3 (The Penn Texas, westbound) and No. 30 (The Spirit of St. Louis, eastbound) between New York, New York and St. Louis, Missouri. Penn Central Company intends to discontinue these trains effective March 20, 1969.

"The schedules of trains No.s 3 and 30 and the places served by these trains are shown below:

| (Read Down) | | | (Read Up) |
| --- | --- | --- | --- |
| No. 3 Daily | Local Time | | No. 30 Daily |
| v 6.45 P | Lv. New York, N. Y. | | Ar. 9.20 A |
| \* \* | \* \* \* \* | | \* \* |
| 3.30 P | Ar. St. Louis, Mo. | | Lv. 12.10 P |
| \* \* | \* \* | | \* \* |

"Persons desiring to object to the proposed discontinuance should notify the Interstate Commerce Commission in Washington, D. C. of their objections and the reasons therefor, on or before March 5, 1969."

49 U.S.C. § 13a(1) provides as follows concerning the notice to be filed with the Commission:

"A carrier  \* \* \*, if their rights with respect to the discontinuance of the operation  \* \* \* of any train  \* \* \* operating from a point in one state to a point in any other state  \* \* \* are subject to (state regulation)  \* \* \*, may, but shall not be required to, file with the Commission  \* \* \* notice at least thirty days in advance of any such proposed discontinuance  \* \* \*. The carrier filing such notice may discontinue  \* \* \* any such operation pursuant to such notice except as otherwise ordered by the Commission  \* \* \*."[3]

Plaintiffs contend that:

"Penn Central failed to effectively-invoke the jurisdiction of the Interstate Commerce Commission, and thus to supersede the jurisdiction of the Pennsylvania Public Utility Commission and its sister States, because notice was not filed with the Interstate Commission at least 30 days in advance of the proposed discontinuance so as to constitute a valid 30 days' notice period." (Page 5 of plaintiff's brief.)

The ruling of the Commission rejecting plaintiffs' contention appears in this paragraph (334 I.C.C. 642):

"(1) The language of section 13a(1) required the carrier to file the notice and statement if it elected to proceed under that section, 'at least

---

priate railroad regulatory bodies of each State served by such trains and upon others as required by section 13a(1) and regulations thereunder (49 CFR 1122.5(j))."

3. This section provides in subsequent wording that the Commission may undertake an investigation within such 30-day notice period and may require the train to be continued in operation pending hearing and decision. An investigation was undertaken by order of March 6 and hearings were held by an examiner of the Commission on consecutive working days beginning April 14, 1969, at St. Louis Missouri (3 days); Effingham, Illinois; Terre Haute, Greencastle, Indianapolis, and Richmond, Indiana; Dayton, Columbus and Dennison, Ohio, and Pittsburgh and Altoona, Pennsylvania. Hearings were also held in Harrisburg and Philadelphia, Pennsylvania, in May, 1969.

thirty days in advance of any such proposed discontinuance.' Thus, it is appropriate, as the railroad states, to count back from the proposed date of discontinuance, not as rule 21 proposes for filing ordinary pleadings. Just as 1 day 'in advance' of today is yesterday, in this case we start counting with March 19 as the first day in advance of March 20, and proceed back to February 18 as the 30th day. Thus, the notice and statement were timely filed, in this respect.[2]" (Footnote 2 omitted)

Consequently, the initial issue in this case is whether this notice provision was complied with by Penn Central on February 18, 1969, when it filed with the Interstate Commerce Commission its notice of discontinuance of Trains 3 and 30 between New York and St. Louis effective March 20, 1969.[4]

■ Rule 6(a) of the Federal Rules of Civil Procedure provides that "(i)n computing any period of time prescribed * * * by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, * * *" 28 U.S.C.A. Commentators have labeled this reference to "any applicable statute" as vague, Wright & Miller, Federal Practice and Procedure: Civil § 1162 n. 22, and ambiguous, 2 J. Moore, Federal Practice § 6.04, p. 1463. Its reference, however, is broad and can, therefore, reasonably be said to refer to time periods in any statute that will be applied in an action in the District Court. Wright

& Miller, supra. Such being the case, the computation of the thirty-day notice period set forth in Section 13a is governed by Rule 6(a).[5] See Union National Bank of Wichita v. Lamb, 337 U.S. 38, 40–41, 69 S.Ct. 911, 93 L.Ed. 1190 (1949); Boulet v. Millers Insurance Assn. of Illinois, 36 F.R.D. 99 (D.Minn. 1964).

■ Applying Rule 6(a) to the facts of the case at bar, February 18, 1969, the date of receipt of the notice by the Interstate Commerce Commission, would not be counted since it is the day from which the thirty-day period begins to run; thus, computation would begin with February 19, 1969. Counting forward from February 19, the thirtieth day would be March 20, 1969, the effective date of the proposed discontinuance. Up to this point, there is little disagreement between the parties. The plaintiffs, however, contend that Congress intended a full or clear day to intervene before discontinuance as opposed to fractional minutes of the final day and, in support, rely on the language contained in Section 13a(1) and, among other cases, Stringer v. United States, 90 F.Supp. 375, 117 Ct.Cl. 30 (1950).

The Stringer case was a suit to recover a salary difference caused by a reduction in grade contrary to the Veterans Preference Act of 1944, 5 U.S.C. § 2108. Section 14 of that Act provided that there shall be no reduction in rank or compensation except for certain enumerated reasons and that the person sought to be reduced shall have " * * * at least thirty days' advance written notice * * *." of the reasons.

4. In their briefs, plaintiffs contend that this notice would authorize the discontinuance of these trains at 12:01 A.M. on March 20, 1969. This is in accord with the Commission's ultimate finding that discontinuance became " * * * effective at 12:01 A.M. on July 20, 1969 * * * ". 334 I.C.C. at 676. See also, 334 I.C.C. 642 n. 2. Consequently, at 12:01 A.M. the railroad was authorized to discontinue even though the trains were in transit and had not arrived at final destination.

5. State Court election decisions, although helpful in viewing the general situation, are slender reeds on which to rely when the applicability of Rule 6(a) of the Federal Rules of Civil Procedure is so clear. Thus, counting back from the proposed date of discontinuance is an improper method of computation under Section 13a(1).

The Court of Claims held that thirty full days of notice were required to be given and, thus, the period did not expire until the last minute of the thirtieth day. The similarity between the notice language employed by Congress in the Veterans Preference Act and in the Transportation Act of 1958 would appear to require the same conclusion here.

Little aid is provided by the legislative history in deciding whether Congress actually intended thirty full days to expire before discontinuance could take effect. 2 U.S.Code Cong. & Adm. News, p. 3456 (1958). However, Congress in employing the terms "at least" and "in advance" and "thirty days' notice period" when it approved the Transportation Act of 1958, must have had a specific objective in mind. In our view, the most reasonable interpretation is that Congress used these particular phrases to insure that thirty full days would pass before any discontinuance occurred.[6] In this case, thirty full days did not pass and thus, the notice requirement was not met.

It is not significant in this case whether or not actual prejudice occurred because failure to comply with the notice provision of Section 13a(1) deprives the Interstate Commerce Commission of its jurisdiction to approve or disapprove the discontinuance. The legislative history clearly indicates that Congress did not intend to usurp the State Public Utility Commission of all power over interstate train discontinu-

ances, 2 U.S.Code Cong. & Adm.News, p. 3468 (1958), but that great pain was taken to set forth a method by which the railroads could, *at their option*, submit proposed discontinuances to the Interstate Commerce Commission. See generally, City of Chicago v. United States, 396 U.S. 162, 90 S.Ct. 309, 24 L.Ed.2d 340 (1969). Therefore, if the Interstate Commerce Commission is to obtain jurisdiction of train discontinuances affecting numerous States, such as here, the notice procedure authorized by Statute must be strictly followed. Cf. C. A. B. v. Delta Air Lines, 367 U.S. 316, 329, 81 S.Ct. 1611, 6 L.Ed. 2d 869 (1961). Otherwise, jurisdiction properly belongs to the States.[7] It is unfortunate that this matter must be disposed of on this basis for many hours of testimony were taken in many cities and obviously much work was performed by the Interstate Commerce Commission. We have no other recourse, however, where the Commission's Order of March 6, 1969, instituting the investigation is defective.

In the event, however, that our holding on notice requirements is not sustained, we make reference here to the issues raised on the merits. A careful review of the record before the Commission, the decision of July 11, 1969, and the able briefs and arguments of counsel make clear that this Court would not be justified in setting aside the finding, at 334 I.C.C. 676, "that continued operation of passenger trains Nos. 3

6. See generally, Annot. 98 A.L.R.2d 1331 (1963) and 86 C.J.S. Time §§ 13(5), 13 (12).

7. It is noteworthy that the final portion of Section 13a(1) reads as follows: "The provisions of this paragraph shall not supersede the laws of any State or the orders or regulations of any administrative or regulatory body of any State applicable to such discontinuance or change unless notice as in this paragraph provided is filed with the Commission. On the expiration of an order by the Commission after such investigation requiring the continuance or restoration of operation or service, the jurisdiction of any State as to such

discontinuance or change shall no longer be superseded unless the procedure provided by this paragraph shall again be invoked by the carrier or carriers." 49 U.S.C. § 13a(1).

The foregoing amply demonstrates that Congress was vitally concerned with Federal-State relations. Our concern should be no less. Like all administrative agencies, the Interstate Commerce Commission " * * * is entirely a creature of Congress and the determinative question is not what the Board thinks it should do but what Congress has said it can do." C.A.B. v. Delta Air Lines, 367 U.S. 316, 322, 81 S.Ct. 1611, 1617 (1961).

and 30 by Penn Central * * * is not required by public convenience and necessity and that continued operation thereof would unduly burden interstate and foreign commerce," since this finding is supported by substantial evidence. See United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). Plaintiffs' contention that the July 11, 1969, decision failed to properly "balance public convenience and necessity against undue burdens on interstate commerce"[8] must be rejected on this record.[9] As stated in State of New York v. United States, 299 F.Supp. 989, 1001 (N.D.N.Y.1969), aff'd. 396 U.S. 281, 90 S.Ct. 545, 24 L. Ed.2d 462 (1970):

"This determination of whether the public interest would be best served by continuing or discontinuing the trains is a question that requires the exercise of informed expert judgment and the weighing and balancing of many complicated and intricate facts. Under the Act this task has been left to the Commission.

\* \* \* \* \*

"Accordingly we find sufficient evidence in the record and ample authority in the statute to support the Commission's findings incorporated in its report. The conclusions the Commis-

sion reached are carefully expressed and clearly explained in the report, and in our view are not inadequate, capricious, or arbitrary."

■ Substantial evidence shows that the utilization of Trains 3 and 30 by revenue passengers has declined since 1964 (Penn Central Exhibits 9 and 11– 22, N.T. 72, 86, 180–83, 377–81 and 2017–19, and Appendix B of the July 11, 1969, decision). Plaintiffs have not carried the burden of showing that the cost, revenue and other financial computations of the Commission are erroneous. As stated in State of New York v. United States, supra, at 1001:

"The determination of the methods of accounting and the methods of cost allocation which provide the most realistic picture of a railroad's operations and most realistically depict the effect a continuance or discontinuance will have on those operations is a determination that requires expertise and \* \* \* the Commission's preference for the carrier's methods must be assumed by us as the choice of the agency having expert knowledge of proper railroad accounting procedures."

The other reasons given by plaintiffs for setting aside the Commission's order of July 11, 1969, discontinuing the investigation (see Part II of their Open-

---

8. Plaintiffs rely on Southern R. Co. v. North Carolina, 376 U.S. 93, 105, 84 S.Ct. 564, 571, 11 L.Ed.2d 541 (1964), in making this contention.

9. For example, the testimony taken at Terre Haute, Indiana (N.T. 545–664), on April 18, 1969, disclosed general objections to decreasing train service and a fear that if these two trains were withdrawn the remaining passenger service on the route between St. Louis and New York would be later curtailed (e. g., N.T. 592 and 663–64). However, none of the approximately 11 witnesses testified that the remaining service after discontinuance of trains Nos. 3 and 30 would not meet their needs. Although three witnesses connected with colleges testified that their students used the present train service, the testimony was quite indefinite. (N.T. 609 ff.) Similar testimony taken along the route of these trains resulted in the

Commission making these findings (334 I.C.C. 651):

"\* \* \* (A) cross 85.5 percent of this route, neither train No. 3 nor train No. 30 ever have an average passenger load big enough to fill one of Greyhound's smaller MCI–5–5A 39-seat buses; indeed their load is so small that if the railroad used such a bus, it would still have enough empty seats on an average day to accommodate an additional 15 percent or more of its revenue passengers as free passengers (infants and employees). Another similar fact is that the average load does not require more than one coach to seat everyone except east of Paoli (26 miles out of North Philadelphia). Even the on-off count (appendix B, part four) shows no loads beyond bus capacity west of Harrisburg, including pass riders."

ing Brief), have been carefully considered and are rejected.[10]

Summing up, therefore, we hold that the Interstate Commerce Commission failed to obtain jurisdiction over the proposed train discontinuance by Penn Central of Trains 3 and 30 between New York and St. Louis. It was, therefore, error for the Commission to dismiss, on July 11, 1969, plaintiffs' Petition to Reject the notice given the Commission by Penn Central on February 18, 1969. Accordingly, the motion of plaintiffs for summary judgment will be granted.

VAN DUSEN, Circuit Judge (dissenting in part).

I dissent and would dismiss the Amended Complaint, since I disagree with that portion of the majority opinion beginning with the last full paragraph on page 6 and ending on the third line of page 10.

All the notices required to be posted and sent to state officials were posted and sent on or before February 17. The only possible non-compliance with the wording of 49 U.S.C. § 13a(1) was the filing of the Notice with the Commission before 11 A.M. on February 18. On the three prior occasions when the Commission conducted an investigation and hearings on the Railroad's application to discontinue two trains (one eastbound and one westbound) between St. Louis and New York (1964, 1965–1966, and 1968), the notices were filed with the Commission, posted, and served on the state authorities in admitted compliance with the 30-day requirement. This record demonstrates that the purposes sought to be achieved by the language of Congress in requiring the notices have been fully secured and there is no suggestion that any person has been deprived of an opportunity to express his, her, or its views on the proposed discontinuance of these trains.

In view of the extensive consideration given to the discontinuance of these St. Louis-New York trains,[1] the many hearings held in the proceeding involved in this case, and the fact that thirty 24-hour periods elapsed between the time of filing the challenged notice with the Commission and the proposed discontinuance, I believe that the July 11, 1969, orders and ruling (334 I.C.C. 638, 642) that the notice filed with the Commission prior to 11 A.M. on February 18, 1969, complied with 49 U.S.C. § 13a(1) should not be set aside, enjoined or annulled on this record.[2] Cf. State of Montana v. United States, 202 F.Supp. 660, 662 (D.Mont.1962).

---

10. The thorough and objective consideration of most of these reasons in Parts II and III (pp. 9–24 of the brief of the United States of America and Interstate Commerce Commission, Document 44) makes further discussion in this opinion unnecessary.

1. In addition to the proceedings involving the proposed discontinuance of trains 3 and 4 from 1964–1967, the Commission has investigated and held hearings concerning the proposed discontinuance of these identical trains (Nos. 3 and 30) at Finance Docket No. 25,074 (initial filing in April 1968), resulting in the decision denying discontinuance for a four-month period at 333 I.C.C. 736.

2. I agree with plaintiffs that compliance with 49 U.S.C. § 13a(1) is required in order to give the Commission jurisdiction to act. See Sludden v. United States, 211 F.Supp. 150, 155 (M.D.Pa. 1962). The affirmance by the Supreme Court of the United States on January 12, 1970, 396 U.S. 925, 90 S.Ct. 265, 24 L.Ed.2d 224 of City of Sheridan v. United States, 303 F.Supp. 990, 994–95 (D.Wyo. 1969), supports that part of the July 11, 1969, decision (334 I.C.C. 642–43) holding that the filing of the notice of proposed discontinuance was not premature.