A. Ernest **FITZGERALD** et al.

v.

**Robert E. HAMPTON,** Chairman of United States Civil Service Commission, et al., Appellants.

No. 71-1771.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1972.

Decided Sept. 15, 1972.

Stay Granted Dec. 11, 1972. See 93 S.Ct. 549.

Mr. Walter H. Fleischer, Atty., Dept. of Justice, with whom Mr. L. Patrick Gray, III, Asst. Atty. Gen. at the time the brief was filed, Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, and William Kanter, Atty., Dept. of Justice, were on the brief, for appellants.

Mr. John Bodner, Jr., Washington, D. C., with whom Mr. William L. Sollee, Washington D. C., was on the brief, for appellees.

Before BAZELON, Chief Judge, TAMM, Circuit Judge, and MATTHEWS,* U. S. Senior District Judge for the District of Columbia.

MATTHEWS, Senior District Judge:

An action was brought in the District Court by A. Ernest Fitzgerald against Robert E. Hampton, Chairman of the United States Civil Service Commission, and Herman D. Staiman, Chief, Appeals Examining Office, United States Civil Service Commission, and the hearing examiner in an appeal before the Commission of plaintiff Fitzgerald. This is an appeal by defendants from an order of the District Court holding that due process requires that plaintiff be given an open and public hearing before the Commission in his appeal for reinstatement to his federal employment and enjoining the Commission from holding further hearings closed to the public and press.[1]

---

* Sitting by designation pursuant to 28 U.S. C. § 294(c) (1970).

1. Also listed as plaintiffs in the complaint in the District Court are James Davidson, Executive Director of the National Taxpayers Union, and Robert Kephart, Publisher of Human Events (a weekly newspaper). Since the decision of the District Court rests only upon the found rights of plaintiff Fitzgerald, this appeal does not present any issues as to the other two plaintiffs.

In 1965, plaintiff Fitzgerald was appointed to the position of Deputy for Management Systems in the Office of the Secretary of the Air Force.[2] On January 5, 1970, plaintiff was separated from his federal employment, purportedly by reason of the abolishment of his position through a reduction-in-force and the unavailability of another appropriate position within the Department.

Fitzgerald appealed his removal to the Civil Service Commission contending that he was in fact illegally fired from his job in retaliation for testimony which he gave before the Senate-House Joint Economic Committee with regard to cost overruns in the Air Force C5A program.

Fitzgerald requested a hearing which the Commission granted. But his numerous requests that the hearing be "open to the public and press" were denied. This request was renewed at the time the hearing commenced and was again refused. Thus, the hearing began on May 4, 1971, with the public and press being barred from entry. It was, however, adjourned on May 5, and scheduled to resume on June 16.

On June 3, 1971, Fitzgerald brought the present action in the District Court seeking to compel the Commission to open the hearing to the press and public on the ground that a non-public hearing violates his rights under the Fifth Amendment.

On June 15, 1971, the District Court denied Fitzgerald's motion for a preliminary injunction. The following day Fitzgerald moved for summary judgment and for expedited consideration since the closed hearing which the complaint sought to enjoin was continuing on a daily basis and would be completed long before the Court would resolve this case in the course of ordinary procedures. On June 22, 1971, the District Court issued a temporary restraining order against continuation of the closed hearing, pending the Court's expedited consideration of the motion for summary judgment.

In an order dated June 25, 1971, the District Court, 329 F.Supp. 997, granted plaintiff's motion for summary judgment and permanently enjoined the defendants, their agents and employees from holding hearings closed to the press and public in the appeal of Fitzgerald. This appeal followed, and pursuant to Rule 8, Federal Rules of Appellate Procedure, resumption of the Fitzgerald hearing before the Commission has been stayed by this Court pending its resolution.

Two questions are presented: (1) whether a former government employee who is a veterans' preference eligible, and who has been granted a hearing by the Civil Service Commission on his claim for reinstatement on the ground that he was illegally fired, has been denied due process of law by the Commission, which, following its own regulation, closed the hearing to the public and press; and (2) whether the exhaustion of administrative remedies doctrine precluded the District Court from enjoining the Commission from holding closed hearings in the Fitzgerald case before the administrative process had been completed.

I

## THE RIGHT TO A HEARING

In a document entitled "Notice of Proposed Separation Due to Reduction in Force"[3] the Air Force advised Fitzgerald of his proposed separation; Fitzgerald's employment status was stated as:

(a) Position Title and Grade: Deputy for Management Systems, GS–103–17, Schedule A.

(b) Retention Subgroup: 1A

(c) Competitive Level: 420, Financial Management Systems-Supervisor

(d) Service Computation Date: 8 November 63

---

2. See 5 C.F.R. § 213.3109.

3. Appendix, p. 27.

This is a position in the "excepted" service. Title 5, Code of Federal Regulations, PART 6, entitled "EXCEPTIONS FROM THE COMPETITIVE SERVICE (RULE VI)" deals with "excepted" position; § 6.4 provides:

"*Except as may be required by statute,* the Civil Service Rules and Regulations shall not apply to *removals* from positions listed in *Schedules A* and C or from positions excepted from the competitive service by statute." (Emphasis added.)

Fitzgerald, however, is a veteran. As such he is entitled by statute to certain Civil Service benefits afforded to "preference eligibles."[4] Reduction-in-force procedures found in PART 351 of the Regulations are applicable.[5] They do not provide for a hearing. But a preference eligible has a statutory right to a hearing in his appeal to the Civil Service Commission of an "adverse action" taken against him by an agency.[6] The procedures for the hearing are set out in 5 C.F.R. § 772.305.

The defendants view this case as simply a "reduction-in-force separation," which is nothing more than a routine personnel matter. It is their position that the Air Force separated Fitzgerald under applicable reduction-in-force procedures, said separation being caused by the abolishment of his position and the unavailability of another appropriate position within the Department, and that Fitzgerald was not *entitled* to a hearing since applicable regulations do not require the holding of a hearing in reduction-in-force cases. They proffer in explanation of the *granting* of Fitzgerald's request for a hearing that this is the Commission's *practice* in cases involving "preference eligibles," and that such

hearings are then conducted under the provisions of PART 772 of its regulations. In denying Fitzgerald's request for an *open* hearing, defendants rely on 5 C.F.R. § 772.305(c)(3), which specifically excludes the public and the press from the hearings.

Although defendants acknowledge that constitutional considerations may come into play where the stated grounds for removal will stigmatize the employee and seriously prejudice or destroy his ability to obtain any other employment,[7] they submit that the impairment of individual rights in the constitutional sense is peculiarly absent where the stated ground for separation is a reduction-in-force. Consequently, say the defendants, not only is there no valid constitutional claim made to a hearing with "all the attributes of a criminal trial," but Fitzgerald has no *right* to any hearing at all, since a right to a hearing depends upon an applicable statute or regulation,[8] and the hearing granted herein derives entirely from *administrative practice.*

We do not quarrel with the basic tenets upon which defendants rely nor with their applicability to a "routine reduction-in-force personnel matter." But we do not view the case as a "routine reduction-in-force personnel matter."

The separation of Fitzgerald was initiated by the Air Force. Although the Air Force *stated* the reason for separation as a reduction-in-force, we cannot ignore the fact that Fitzgerald is vigorously contesting his separation on the ground that it was not a reduction-in-force, and that he has, in fact, been *wrongfully fired.*[9] Were we to look no further than the *stated* reason for an employee's separation, not only could an

4. 5 U.S.C. § 2108.

5. 5 U.S.C. §§ 3501–3502.

6. 5 U.S.C. §§ 7511–7512, 7701.

7. Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

8. Cafeteria & Rest. Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

9. This is an alleged violation of 5 U.S.C. § 7512(a) which provides:

"An agency may take adverse action against a preference eligible employee, or debar him for future appointment, only for such cause as will promote the efficiency of the service."

agency cavalierly discharge preference eligibles under the guise of a "reduction-in-force" but under that type of action it could also deprive them of all adverse action procedural rights to which preference eligibles are entitled, including the *right* to a hearing.

It appears to us that the rationale applied in those cases involving "involuntary or coerced resignations" is applicable here.

In Paroczay v. Hodges,[10] a veteran brought suit in the District Court alleging that his resignation from his position in the Department of Commerce was the result of duress and did not result in valid personnel action to terminate his service without compliance with the Veterans' Preference Act.[11] A request for a hearing before the Civil Service Commission, and an appeal to the Commission, were denied by the Commission on the ground that plaintiff had voluntarily resigned and, therefore, no adverse personnel action within the purview of the Veterans' Preference Act had occurred which entitled plaintiff to a hearing. Finding on the basis of affidavits that the resignation was voluntary, the District Court granted the Government's motion for summary judgment. On appeal, we found there to be a material issue of fact as to whether or not the resignation was voluntary, making the case inappropriate for disposition by summary judgment. We reversed and remanded the case to the District Court. No contention was made by anyone at any stage that the Commission had erred in declining to entertain the appeal in the first instance. Nevertheless, the District Court remanded the case to the Civil Service Commission "with directions to conduct further administrative proceedings, including an oral hearing, not inconsistent with the

aforesaid opinion of the Court of Appeals * * *." [12]

In Dabney v. Freeman,[13] plaintiff had represented to the Civil Service Commission that her resignation from a position in the Farmers Home Administration was coerced. She requested a hearing which the Commission refused, maintaining that resignations were not adverse actions and could not be made the subject of an appeal to the Commission. Plaintiff then took her complaint to the District Court, which by order, reciting the *consent* of the parties, remanded the case to the Civil Service Commission "with directions to conduct further administrative proceedings, including an oral hearing, relating to the manner of [appellant's] separation from Government service." [14] In formulating the issue, the Appeals Examining Office stated that "[A] separation resulting from resignation has been held to be an adverse action the same as a discharge where it is shown that the resignation was coerced." [15] The hearing which was accorded the employee was an evidentiary one at which the employee was represented by counsel and at which all parties to the resignation episode, including the employee, testified. We were of the view that this approach was the correct one. We said:

> "The Commission has been entrusted by Congress with the function of hearing and deciding appeals from assertedly wrongful separations from federal service. It seems to us that a separation by reason of a *coerced* resignation is, in substance, a discharge effected by adverse action of the employing agency. If and when the Commission's relieving authority is invoked by non-frivolous allegations of coercion, the Commission should entertain the appeal and hear and deter-

---

10. 111 U.S.App.D.C. 362, 297 F.2d 439 (1961).

11. 58 Stat. 390 (1944), as amended, 5 U.S.C. § 863 (1958) (now § 7701).

12. Paroczay v. Hodges, 219 F.Supp. 89, 90 (1963).

13. 123 U.S.App.D.C. 166, 358 F.2d 533 (1965).

14. *Id.* at 167, 358 F.2d at 534.

15. *Id.* at 168, 358 F.2d at 535.

mine the allegations. If they are sustained, the Commission presumably must find that the particular separation has not been effected in the manner required by law and must reinstate the employment, subject to the employer's continuing discretion to initiate discharged proceedings in the prescribed manner. If they are not sustained, the appeal is to be dismissed as outside the limits of the Commission's jurisdiction." [16]

Although we were not squarely faced with the issue, due to the consent order, it was our view that the District Court had acted wisely in entering it. "We surmise[d] * * * that the Government's consent may have reflected a realistic recognition of the fact that the Regional Director had denied appellant an appeal to which she was entitled." [17]

In Goodman v. United States,[18] appellant had sought an appeal before the Civil Service Commission alleging involuntary resignation, and the Commission had refused it on the same ground (that resignations were not adverse actions). This had been affirmed by the Board of Appeals and Review, and in the District Court which had granted the Government's motion for summary judgment. We reversed and remanded, saying:

> "We believe that, in Government employee separation cases where the issue of voluntariness with respect to a resignation is raised, there should be a hearing before the Commission similar to that approved by this court in *Dabney*. Only in this way can the facts with reference to the alleged promises and coercion be developed with any degree of reliability." [19]

We remanded the case to the District Court with instructions to remand it to the Commission for a *Dabney*-type hearing.

The issue of Fitzgerald's right to a hearing is not squarely before us here, since the Commission granted his request for a hearing, albeit for the reason that it is a practice of theirs (as opposed to a right stemming from a statute or regulation) to grant hearings to preference eligibles when requested in a reduction-in-force separation. We could also "surmise" here that this reflects "a realistic recognition" by the Commission of the fact that in circumstances such as we have before us, preference eligibles do have a statutory right to a hearing.[20]

But be that as it may, we emphasize that Congress entrusted the Commission with the function of hearing and deciding appeals from *assertedly* wrongful separations from federal service. Although a separation may have been stated by an agency to be by a reduction-in-force, when the Commission's relieving authority is invoked by non-frivolous allegations of an illegal discharge, which if proved would constitute an illegal adverse action by the agency, we think a request for a hearing should be granted as a procedural right to which preference eligibles are entitled.

It is our opinion that Fitzgerald has a statutory right to the hearing which the Commission says it "gratuitously" gave him. It is upon this basis that we turn to the liberty and property aspects of the rights which Congress granted to preference eligible employees.

## LIBERTY AND PROPERTY OF THE FIFTH AMENDMENT

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." The Supreme Court has held that the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the "liberty and property" concepts of the Fifth Amendment,[21] "property"

---

16. *Id.*

17. *Id.*

18. 123 U.S.App.D.C. 165, 358 F.2d 532 (1966).

19. *Id.* at 166, 358 F.2d at 533.

20. 5 U.S.C. § 7701.

21. Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889);

being the employment, and "liberty" being the freedom to practice a chosen profession.

In Greene v. McElroy,[22] the denial by the Government of a security clearance to Greene not only deprived him of his livelihood but virtually destroyed his work opportunities in his chosen profession. The Supreme Court found it unnecessary to reach the constitutional issue, concluding that in the absence of explicit authorization, Greene could not be barred from following his profession by an administrative action without according him the traditional safeguards of confrontation and cross-examination.

However, the Supreme Court took a different view of the private employment presented in Cafeteria & Rest. Workers v. McElroy.[23] There, the facts revealed that for six years Rachel Brawner had had an entirely satisfactory record as a short-order cook employed by M & M Restaurants, Inc., on the premises of the Naval Gun Factory in Washington, D. C. Her security badge was taken from her on grounds that she had failed to meet "security requirements", which in effect foreclosed her admission to the Naval Gun Factory and terminated her employment. She requested a hearing. Her request was denied, and she brought suit challenging the denial of a hearing on due process grounds. Although the explicit authorization, found wanting in *Greene,* was shown, the Court upheld the denial, pointing out that the Fifth Amendment does not require a trial-type hearing in every conceivable case of government impairment of a private interest.

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. Where it has been possible to characterize that private interest (perhaps in oversimplification) as a mere privilege subject to the Executive's plenary power, it has traditionally been held that notice and hearing are not constutitionally required. (Citations omitted.)"[24] While the Supreme Court recognized that Mrs. Brawner's status as an employee at the Naval Gun Factory was an interest of sufficient definiteness to be protected by the Federal Constitution from some kinds of governmental injury, it did not find a sufficient "liberty and property" interest necessitating a hearing to comport with Fifth Amendment due process, since it appeared that Mrs. Brawner was "free to obtain employment as a short-order cook or to get any other job, either with M & M or with any other employer."[25] The Court noted that "this is not a case where government action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity."[26] The Court spoke of the employment of Mrs. Brawner as analogous to that of a government employee whose government employment, in the *absence* of legislation, can be revoked at the will of the appointing officer, citing Vitarelli v. Seaton[27] as a recent case in point. There the Supreme Court had pointed out that Vitarelli, an employee

---

Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) ; Peters v. Hobby, 349 U.S. 331, 352, 75 S.Ct. 790, 99 L.Ed. 1129 (1955), concurring opinion; cf. Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) ; Truax v. Raich, 239 U.S. 33, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915) ; Allgeyer v. Louisiana, 165 U.S. 578, 589–590, 17 S.Ct. 427, 41 L.Ed. 832 (1897) ; Powell v. Pennsylvania, 127 U.S. 678, 684, 8 S.Ct. 992, 32 L.Ed. 253 (1888).

22. 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed. 2d 1377 (1959).

23. 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

24. *Id.* at 895, 81 S.Ct. at 1748.

25. *Id.* at 896, 81 S.Ct. at 1749.

26. *Id.* at 898, 81 S.Ct. at 1750.

27. 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

of the Department of Interior who "was at no time within the protection of the Civil Service Act, Veterans' Preference Act, or any other statute relating to employment rights of government employees, and who, [was] a 'Schedule A' employee, could have been summarily discharged by the Secretary at any time without the giving of a reason * * *." [28]

While there is much to be gleaned from these decisions, they are nonetheless distinguishable from the case before us. In each the employee's removal was grounded on "security" reasons. *Greene* and *Cafeteria Workers* involved government interference with *private* employment. *Vitarelli* concerned a public servant whose employment was not protected by any legislation.

In the case at bar we have a former government employee claiming that he is entitled to due process of law in hearing procedures wherein he is contesting his removal. There is no claim here of an abstract right to a government position. Fitzgerald's employment is under *legislative protection*. The vehicle is the Veterans' Preference Act.

Congress is the policy-making branch of our government. Chief Judge Jones, writing for the Court of Claims, observed that "[t]here is nothing ambiguous about the Veterans' Preference Act. Rightly or wrongly, it was enacted by the Congress in recognition of the great sacrifices of those who had an active part in our national defense at times when everything we cherish was at stake." [29] Finding that the Civil Service Commission had not complied with the Act, he said: "These are not little matters. They are of vast concern to the great array of veterans who at least are entitled to a good-faith compliance with the rights granted by a grateful people through their Congress. We cannot set

the pattern of trimming away these rights." [30]

■ "The constitutional requirement of procedural due process of law derives from the same source as Congress' power to legislate and, where applicable, permeates every valid enactment of that body." [31] In enacting the Veterans' Preference Act, Congress carefully outlined the preference to be given veterans who are seeking government employment, the circumstances under which they can be reduced in rank, the reasons for which they can be removed, and the procedures which the agencies are to follow in any such actions involving a veterans' preference eligible employee. Congress has forbidden an agency to take adverse actions against preference eligible employees "except· for a cause which will promote the efficiency of the service," and in such action it has provided the employee with the right to notice and a hearing. [32]

■ Clearly Congress intended to give preference eligible employees rights which would assure them of additional security in their public employment not enjoyed by unprotected federal employees and to insure them against unreasonable, arbitrary and capricious governmental intervention. [33]

■ We hold that the statutory employment rights of Fitzgerald are within the liberty and property concept of the Fifth Amendment and sufficient for him, as a preference eligible employee, to invoke the due process clause.

## DUE PROCESS IN ADMINISTRATIVE PROCEEDINGS

Having thus determined that Fitzgerald's rights to a hearing are under the protection of the Fifth Amendment, we are face to face with the question as to

28. *Id.* at 539, 79 S.Ct. at 972.

29. Stringer v. United States, 90 F.Supp. 375, 380, 117 Ct.Cl. 30, 52 (1950).

30. *Id.* at 381.

31. Wong Yang Sung v. McGrath, 339 U.S. 33, 49, 70 S.Ct. 445, 454, 94 L.Ed. 616 (1950).

32. 5 U.S.C. §§ 7512, 7701.

33. Norton v. Macy, 135 U.S.App.D.C. 214, 217, 417 F.2d 1161, 1164 (1969).

whether procedures which provide that hearings be closed to the public and press deny him due process of law.

In defense of its hearing procedures the Government states that these procedures were designed to accomplish a limited purpose—to afford an employee the opportunity to show that his separation, although not injuring him in a constitutional sense, was improper under applicable regulations. It again urges on us the Commission *practice* to limit the scope and purpose of such hearings to an inquiry as to the facts and propriety of an adverse action, with an eye toward resolution of internal personal matters. The Government tells us that the Commission's experience for over 25 years had led it to conclude that its goals are effectively and most fairly accomplished without the presence of the general public and the press at personnel hearings. It contends that the principles discussed in In re Oliver,[34] are clearly inapposite to the present matter since *Oliver* involves rights of a criminal defendant under the Sixth Amendment, which by its very terms, requires a "public trial." The Government insists that the danger of abuse of governmental power and "Star Chamber" methods in criminal prosecutions which gave rise to the Sixth Amendment guarantee of "public trial" is not even remotely present here. While it concedes that "public trial" concepts evolved under the Sixth Amendment might have possible relevance, as a matter of due process where the administrative proceedings involve important constitutional rights, it maintains that in this kind of case (meaning a reduction-in-force case) there is no question of constitutionally protected rights.

The fallacy of the Government's argument lies in its theory of the Fitzgerald case. As we have already stated, we do not view the case as a "routine reduction-in-force personnel matter." We see it as one in which the administrative proceedings involve important constitutional rights of Fitzgerald, to wit: the question as to whether the procedures followed at the required hearing before the Commission comport with due process of law.

"Where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings," the protections afforded by due process of law entitles the individual to a fair opportunity to show that the governmental action was unwarranted.[35] Many of these protections have been formalized from those expressed in the Sixth Amendment, which provides that the accused in all criminal cases shall have the right "to a speedy and public trial, by an impartial jury," to be informed of the "nature and cause of the accusation," "to be confronted with the witnesses against him," to have "compulsory process for obtaining witnesses in his favor," and "to have the Assistance of Counsel for his defence." The Supreme Court has been "zealous to protect these rights from erosion. It has spoken out not only in criminal cases, e. g., Mattox v. United States, 156 U.S. 237, 242–244 [, 15 S.Ct. 337, 339–340, 39 L.Ed. 409]; Kirby v. United States, 174 U.S. 47 [, 19 S.Ct. 574, 43 L.Ed. 890]; Motes v. United States, 178 U.S. 458, 474 [, 20 S.Ct. 993, 999, 44 L.Ed. 1150]; In re Oliver, 333 U.S. 257, 273 [, 68 S.Ct. 499, 507, 92 L.Ed. 682], but also in all types of cases where administrative and regulatory actions were under scrutiny. *E. g.*, Southern R. Co. v. [Commonwealth of] Virginia, 290 U.S. 190 [, 54 S.Ct. 148, 78 L.Ed. 260]; Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292 [, 57 S.Ct. 724, 81 L.Ed. 1093]; Morgan v. United States, 304 U.S. 1, 19 [, 58 S.Ct. 773, 776, 999, 82 L.Ed. 1129]; Carter v. Kubler, 320 U.S. 243 [, 64 S.Ct. 1, 88

34. 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

35. Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959).

L.Ed. 26]; Reilly v. Pinkus, 338 U.S. 269 [, 70 S.Ct. 110, 94 L.Ed. 63]." [36]

"Fairness of procedure is 'due process in the primary sense.' Brinkerhoff-Faris [Trust & Savings] Co. v. Hill, 281 U.S. 673, 681 [50 S.Ct. 451, 454, 74 L.Ed. 1107]." [37]

"The requirement of 'due process' is not a fair-weather or timid assurance. It must be respected in periods of calm and in times of trouble; it protects aliens as well as citizens. But 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history and civilization, 'due process' cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, 'due process' is compounded of history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess. Due process is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process." [38]

▬▬▬ "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness." [39]  That we regard an "open or public hearing" to be a fundamental principle of fair play inherent in our judicial process cannot be seriously challenged. The Sixth Amendment requires a public trial in all criminal cases. Rule 77(b) of the Federal Rules of Civil Procedure requires that "[a]ll trials upon the merits shall be conducted in open court * * *." And in administrative hearings, the rule of the "open" forum is prevailing—if not by statutory mandate, then by regulation or practice.[40]

Any lingering doubts as to the import of open hearings at the administrative level should have been put to rest by the Supreme Court's sanction of the "public proceedings" in Federal Communications Commission v. Schreiber.[41] In *Schreiber,* a procedural rule of the Federal Communications Commission which requires public proceedings except where it is shown that the public interest, the dispatch of business, or the ends of justice would be served by nonpublic sessions was in issue. The Court held that the agency had not abused its discretion in insisting upon an open hearing, even in an *investigatory* rather than an adjudicatory proceeding, saying, "[t]he procedural rule, establishing a presumption in favor of public proceedings, accords with the general policy favoring disclosure of administrative agency proceedings." [42]

Where administrative proceedings have been challenged on grounds of procedural due process, the Supreme Court's decisions have consistently distinguished the due process requirements in administrative proceedings of a quasi-judicial character from the due process requirements in proceedings which are purely investigative and fact-finding.

---

36. *Id.* at 497, 79 S.Ct. at 1413.

37. Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 161, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951), concurring opinion of Mr. Justice Frankfurter.

38. *Id.* at 162–163, 71 S.Ct. at 643.

39. In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

40. The Report of the Attorney General's Committee on Administrative Procedure (1941).

41. 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965).

42. *Id.* at 293, 85 S.Ct. at 1469.

In Morgan v. United States,[43] an order of the Secretary of Agriculture fixing the maximum rates to be charged by commission men at stockyards was held void for failure to allow the "full hearing" required by the applicable statute. The Court said this "goes to the very foundation of the action of administrative agencies entrusted by the Congress with broad control over activities which in their detail cannot be dealt with directly by the legislature. The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,'—essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.' (Citations omitted.)"[44] Even in informal proceedings, it has been held that these principles apply when constitutional rights are affected. Chief Judge Murrah, speaking for the Tenth Circuit in Garvey v. Freeman,[45] said of *Morgan*: "This means that what was said and done in these informal proceedings * * * must have been done in an open forum with notice and an opportunity for the traditional right of confrontation and cross-examination."[46]

In Hannah v. Larche,[47] the Supreme Court reached a different result regarding hearings purely investigative and fact-finding in nature. That case involved rules of procedure adopted by the Commission on Civil Rights. The Commission was created in the Executive Branch of the Government by the Civil Rights Act of 1957, to investigate written, sworn allegations that persons had been discriminatorily deprived of their right to vote on account of their color, race, religion or national origin, to study and collect information concerning legal developments constituting a denial of equal protection of the laws and to report to the President and Congress. The Act prescribes certain rules of procedure, but nothing in the Act requires the Commission to afford persons accused of discrimination the right to be apprised as to the specific charges against them or as to the identity of their accusers, or the right to confront and cross-examine witnesses appearing at the hearings. Authorized to adopt supplementary rules of procedure, the Commission's rules of procedure deny such rights in hearings conducted by it. Holding that persons whose conduct was under investigation by a governmental agency of this nature were not entitled, by virtue of the Due Process Clause, to know the specific charges being investigated, the identity of the complainants, or to have the right to cross-examine those complainants and other witnesses, the Court said:

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full

---

43. 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938).

44. *Id.* at 14–15, 58 S.Ct. at 775.

45. 397 F.2d 600 (10th Cir. 1968).

46. *Id.* at 612.

47. 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account. An analysis of these factors demonstrates why it is that the particular rights claimed by the respondents need not be conferred upon those appearing before purely investigative agencies, of which the Commission on Civil Rights is one." [48] Although the Court felt it was "probably sufficient merely to indicate that the rights claimed by respondents are normally associated only with adjudicatory proceedings, and that since the Commission does not adjudicate, it need not be bound by adjudicatory procedures," [49] it nevertheless carefully explained the additional burden which this procedure would place on the investigative process and cited numerous authorities illustrating that the procedure being followed by the Commission conformed with the traditional procedure of investigating agencies in general. Thus, the Court concluded that "the purely investigative nature of the Commission's proceedings, the burden that the claimed rights would place upon those proceedings, and the traditional procedure of investigating agencies in general, leads us to conclude that the Commission's Rules of Procedure comport with the requirements of due process." [50] The Court distinguished *Morgan, Anti-Fascist Committee,* and *Greene* on the ground that "the government agency involved in each was found by the Court to have made determinations in the nature of adjudications affecting legal rights." [51]

There is no question in the present case as to the authority of the Commission to issue the regulation in question. Administration of the Veterans' Preference Act is confided to the Civil Service Commission, and it is empowered to issue appropriate regulations. [52] Pursuant to these regulations it holds hearings in which both the Government and the employee are represented by counsel, witnesses are sworn, testimony is taken, and evidence is submitted. The Commission makes findings of fact and binding recommendations. [53] In short, it takes affirmative action which affects an individual's legal rights. [54]

■■■ We can only conclude that these administrative proceedings are of a quasi-judicial character, and we so hold. Likewise, we are satisfied that due process requires that the Fitzgerald hearing be open to the press and public. This accords not only with the federal judicial tradition but also to general practice in administrative proceedings. "The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. For * * * if these multiplying agencies deemed to be necessary in our complex society are to serve

48. *Id.* at 442, 80 S.Ct. at 1514.

49. *Id.*

50. 363 U.S. at 451, 80 S.Ct. at 1519.

51. *Id.*

52. 5 U.S.C. §§ 1302, 7701.

53. 5 U.S.C. § 7701.

54. Judicial review is provided by the Administrative Procedure Act in Civil Service cases. 5 U.S.C. § 702 provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

And see Norton v. Macy, 135 U.S.App. D.C. 214, 417 F.2d 1161 (1969) for scope of review.

the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play." [55]

The Government urges that even if public trial concepts have a bearing as a matter of due process in this case, such concepts are not absolute ones, and competing factors should be weighed by the courts before determining the necessity for unrestricted access to a particular proceeding.

The record contains a letter dated June 1, 1971, written by Chairman Hampton to Senator Proxmire.[56] In this letter, Chairman Hampton explains that the Commission's experience teaches that the use of uncomplicated and simple proceedings "without distractive formal trappings" facilitate and expedite the "search for truth;" the Commission's belief that the informal atmosphere of the present procedures—without the pressure of spectators and newsmen—enhances the fairness of the proceedings by creating a calm atmosphere; that the present hearing examiners do not have the contempt power of judges and may have less ability or experience in regulating the decorum at the hearing; that the Commission examiner also does not have subpoena power so that his ability to obtain the cooperation of persons no longer working at the employing agency might be seriously impaired by rendering these proceedings open to the general public and press; and that he doesn't know what the impact of an "open hearing" would have on the regularity and fairness of the results of the Commission's hearings or on the participants in them in all of the geographical regions in which the Commission operates.

The Government charges that the District Court addressed itself exclusively to the factor of the privacy of Fitzgerald and overlooked these other considerations. However, we believe a careful reading of Judge Bryant's opinion indicates that he considered these other factors but rejected them as being without substance. He said:

"As against all the weighty considerations favoring open hearings, the only justification of any substance that defendants have advanced in support of the regulation's flat prohibition of [open hearings] is the protection of the privacy of the appellant-employee. This consideration is obviously of no validity where it is the appellant-employee who wants the open hearing." [57]

Although the Government has explained that the purpose of having these hearings "closed to the public and press" is for the benefit and protection of the individual involved, the Government did not explain to the satisfaction of the District Court why a regulation which is for the sole benefit of the employee cannot be waived by him. We agree with the District Court. These so-called "competing factors" are generalizations which amount to little more than mere speculation. There is no evidence of record that the presence of the public and press will in any way impede the Fitzgerald hearing, disrupt the otherwise "calm atmosphere" nor impose additional burdens upon the Commission which it cannot handle. While the hearing examiner "has wide latitude as to all phases of the conduct of the hearing, including the manner in which the hearing will proceed," [58] due process in administrative hearings does not yield to administrative "convenience or expediency, or because of a natural desire to be rid of harassing delay * * *." [59] As Mr.

---

55. Morgan v. United States, 304 U.S. 1, 22, 58 S.Ct. 773, 778, 82 L.Ed. 1129 (1938).

56. Appendix, p. 65.

57. Fitzgerald v. Hampton, 329 F.Supp. 997, 999 (D.C.D.C.1971).

58. Cella v. United States, 208 F.2d 783, 789 (7th Cir. 1953).

59. Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U.S. 292, 305, 57 S.Ct. 724, 731, 81 L.Ed. 1093 (1937).

Justice Douglas has written: "When the Government becomes the moving party and levels its great powers against the citizen, it should be held to the same standards of fair dealing as we prescribe for other legal contests. To let the Government adopt such lesser ones as suits the convenience of its officers is to start down the totalitarian path." [60]

## II

### REQUIREMENT OF EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES PRIOR TO SEEKING JUDICIAL REVIEW

From the very outset the Government has challenged the jurisdiction of the District Court to grant Fitzgerald any relief in this case prior to his exhaustion of available remedies under Civil Service Commission Regulations.

■ Much has been written concerning the requirements of exhaustion of administrative remedies,[61] which need not be repeated here. Suffice it to say that when a litigant goes into court before final administrative review has been had, only rarely and in exceptional circumstances is such a course justified.[62] With regard to these exceptional circumstances, Judge Tamm has written:

"[T]he courts appear to have formulated the general rule that a party may bypass established avenues for review within the agency only where the issue in question cannot be raised

from a later order of the agency, Jewel Companies, Inc. v. FTC, 432 F.2d 1155 (7th Cir. 1970); Elmo Division of Drive-X Co. v. Dixon, 121 U.S. App.D.C. 113, 348 F.2d 342 (1965), or where the agency has very clearly violated an important constitutional or statutory right. Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962)." [63]

We think the case before us presents a claim within the scope of our opinion in *Amos Treat* thus warranting judicial intervention before the regulatory agency has completed its process.

In *Amos Treat* the appellants (registrants) brought an action in the District Court seeking to enjoin the Securities and Exchange Commission from prosecuting a revocation proceeding on allegations that Manuel F. Cohen had participated in the investigation and prosecution of the proceedings as director of the Commission's Division of Corporation Finance, and later, as a member of the Commission, had participated in the decisions. As soon as the appellants learned that Commissioner Cohen had participated in, and intended to participate in, any of the quasi-judicial functions of the Commission relating to the revocation proceeding, they moved that the Commission discontinue the proceedings by reason of Commissioner Cohen's unlawful participation.

The Commission did not deny the allegations of the claimed disqualifying factors,[64] but, after oral argument, the

---

60. Concurring opinion, Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 177, 71 S.Ct. 624, 651, 95 L.Ed. 817 (1951).

61. See McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) and authorities cited therein.

62. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 773–774, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); Hilton v. Sullivan, 334 U.S. 323, 68 S.Ct. 1020, 92 L.Ed. 1416 (1948); Murray v. Kunzig, 149 U.S.App.D.C. 256, 462 F.2d 871 (1972); Lodge 1858, American Federation of Gov. Emp. v. Paine, 141 U.S.

App.D.C. 152, 436 F.2d 882 (1970); Green v. Baughman, 94 U.S.App.D.C. 291, 214 F.2d 878 (1954).

63. Sterling Drug, Inc. v. Federal Trade Commission, 146 U.S.App.D.C. 237, 249, 450 F.2d 698, 710 (1971).

64. But see Securities and Exchange Com'n v. R. A. Holman & Co., 116 U.S.App.D.C. 279, 323 F.2d 284, cert. denied, 375 U.S. 943, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963), where a different result obtained when the allegations of participation in the steps which led to the Commission's proposed hearing were contested, thus rendering the case distinguishable from *Amos Treat*.

Commission denied the motion for a discontinuance and the alternative motion for an opportunity to adduce further evidence on the facts, ruling that Commissioner Cohen was not disqualified from participation in the revocation proceedings. Following the District Court's denial of the relief sought, the registrants appealed, contending that "participation by Commissioner Cohen had rendered the proceedings void and so irrevocably tainted that any final determination which might flow from such proceedings will be invalid."[65] The Government argued not only on the merits of the Commission order, but also that appellants' complaint could be considered in an ultimate review of a final order. We were not persuaded on either point.

Appellants had not waited until the entire hearing had been held before moving that Commissioner Cohen be disqualified. The agency had been afforded the opportunity to pass in the first instance upon the claimed disqualification of its own member. And, we found ourselves confronted, not with "procedural irregularities" at the hearing level which could ultimately be the subject of administrative review, but with a situation where the asserted infirmity was *fundamental.*

It was our view that to allow a member of an investigative or prosecuting staff, who initiated and actively participated in an investigation, and who later became a member of the Commission, to participate in the adjudicatory aspects of the case would be tantamount to the denial of administrative due process. We said:

> "Enough has been said to demonstrate the basis for our conclusion that an administrative hearing of such importance and vast potential consequences must be attended, not only with every element of fairness but with the very appearance of complete fairness. Only thus can the tribunal conducting a quasi-adjudicatory proceeding meet the basic requirement of due process."[66]

■ And so it is with the Fitzgerald hearing. Fitzgerald has not waited until the hearing is completed before asserting his rights to an open hearing. That he has made frequent timely requests that his hearing be open to the public and press is not contested. Thus, the Commission has had the first opportunity to pass upon the matter. And finally, the Commission's action in closing the Fitzgerald hearing to the public and press created an infirmity in the hearing which is a fundamental requirement of due process.

Consequently, we hold that the District Court had jurisdiction on due process grounds to entertain Fitzgerald's claim and to issue the questioned order.

The order of the District Court is

Affirmed.

---

65. Amos Treat & Co. v. SEC, *supra,* 113 U.S.App.D.C. 103, 306 F.2d 263.

66. *Id.* at 107, 306 F.2d at 267.