Donald L. HOAGE, Appellant,

v.

**BOARD OF TRUSTEES OF the UNIVERSITY OF the DISTRICT OF COLUMBIA, Appellee.**

No. 94–CV–1642.

District of Columbia Court of Appeals.

Argued Feb. 11, 1997.

Decided July 2, 1998.

As Amended Oct. 13, 1998.

Gary T. Brown, Washington, DC, for appellant.

Robin C. Alexander, Assistant General Counsel at the time of argument, with whom David A. Splitt, General Counsel, University of the District of Columbia, and Joseph A. Julian, III, Assistant General Counsel, were on the brief, for appellee. Charles L. Reischel, Deputy Corporation Counsel, also entered an appearance for appellee.

Before WAGNER, Chief Judge, and TERRY and FARRELL, Associate Judges.

TERRY, Associate Judge:

Appellant Hoage, an employee of the University of the District of Columbia ("UDC"), was separated from his employment in October 1992 because of a reduction in force ("RIF"). His appeal of the RIF to the president of UDC was rejected in December 1992. Mr. Hoage and eight other former UDC employees filed petitions for review of agency action in the Superior Court in January 1993; they were all consolidated with one another, and three similar petitions were later consolidated with the first nine. After reviewing the agency records, the court denied all twelve petitions. Several of the petitioners appealed to this court from that ruling, but some of their appeals were dismissed and others were stayed, so that Mr. Hoage's case is the only one before us today. On appeal Hoage contends (1) that the trial court erred in holding that he was an Educational Service employee, (2) that the record before the agency and the trial court was incomplete because one crucial document was omitted from it, (3) that the RIF was a pretext for what was actually a retaliatory firing, and (4) that he should have received a hearing, either before the president of the university or before the court. We hold that the trial court did not err in ruling that Hoage was a member of the Educational Service because there was substantial evidence in the record to that effect, that the omitted document would have made no difference in the decision of either the president

of UDC or the trial court, that Hoage failed to show that the RIF was pretextual, and that he was not entitled to a hearing. Accordingly, we affirm.

I

Mr. Hoage had been employed in UDC's procurement department since February 16, 1982, and had twice been promoted, first in 1985 and again in 1989. At the time of his discharge, he was a Deputy Procurement Officer. In February 1992 he applied for an "early out" retirement plan which the trustees of the university had recently approved,[1] but his application was denied because it was submitted too late. He filed a grievance on July 28, 1992, challenging the denial. Ten days later, on August 7, UDC issued to Hoage a "Personnel Action Form One," effective retroactively to October 1, 1991, which indicated that Hoage was in the Career Service, not the Educational Service.[2] This was the first personnel form he had ever received with such a designation. Hoage claims that this designation was made as a means of denying his request for early retirement, since Career Service employees had to have twenty years of UDC employment, rather than ten, in order to be eligible for the "early out" program.[3]

On June 26, 1992, the university's new RIF Rules became effective. In August 1992 the university issued its Administrative Management Plan, Phase I, which called for the consolidation or elimination of several of UDC's administrative units. Under this plan, the Office of Procurement, where Mr. Hoage worked, was among those offices

---

1. According to a memorandum addressed to "Members of the University Community" from Eugene A. Harrington, Jr., Acting Vice President of Administrative Services, anyone in the Educational Service who had at least ten years of service at UDC and was at least forty-five years old was qualified for the early retirement plan. Mr. Hoage was forty-eight at the time, but when he submitted his application, he was a few weeks short of ten years' service. See note 3, *infra*.

2. Form One is a printed form with blanks to be filled in by typewriter or computer. Box 37 on Form One is designed to show, by the use of a number, the "position type" of the employee to whom the form pertains. The number "1" indicates that the employee is in the Career Service; the number "2" designates the Educational Service. Box 37 on Hoage's August 7 form contained the number "1".

3. It is clear from the record, however, that Hoage's early retirement request was rejected not because his employment status was allegedly reclassified, but because it was filed too late. It is also clear that he was not eligible for the early retirement program. He would not have had ten years of service at UDC until February 16, 1992, and the "early out" offer expired on January 14, more than a month before that date. Thus Hoage could not have qualified for the plan. He did not have enough time in service by January 14, and if he had applied after February 16, his application would have been too late. Hoage did not file his application until February 10. Thus the application not only was late (the ground on which it was rejected) but also would have been denied in any event because he lacked the requisite ten years of service at the time of its filing.

whose functions were to be realigned. Following the recommendations in the plan, the president of UDC, Tilden J. LeMelle, approved a proposed RIF that eliminated the position of Deputy Procurement Officer.

On October 21, 1992, Hoage received a notice stating that he would be released from his employment on November 25 as a result of the RIF. He filed a timely request for review of the RIF action with President LeMelle, alleging that the RIF of his position was in retaliation for grievances that he had filed earlier against UDC, that it was designed to single him out, and that the RIF procedures themselves were illegal. On November 20 Hoage's attorney sent the president a copy of the August 7 Personnel Action Form One. If Hoage had been in fact a member of the Career Service, as this form showed, he would be exempt from the applicable RIF rules.

Hoage was released from his position on November 25, 1992. A few days later he received another personnel "Form One," dated December 2, confirming his discharge and showing an effective date of November 25. This form also indicated—with a computer-printed number "1" in box 37 (see note 2, *supra*)—that Hoage was in the Career Service.[4]

On December 17, 1992, in a letter addressed to Mr. Hoage, the president rejected Hoage's appeal, ruling that the elimination of his position was proper. The letter stated that Mr. Hoage had presented "no facts or evidence to support [his] assertion that the decision to conduct a reduction in force was improper or in violation of University Rules." The president also concluded that the notation of a "1" for Career Service in box 37 of the August 7 Form One was simply a typographical error. He reasoned that if the

purpose of issuing the form on August 7 had been to change the designation of the position, such a change "would have been specifically stated on the form and would have several other effects that did not occur," such as a change in Hoage's pay schedule and rate of pay. The president concluded that Hoage's position was in the Educational Service because he was an "educational employee" as defined in the relevant section of the District of Columbia Comprehensive Merit Personnel Act (CMPA), D.C.Code § 1–603.1(6) (1992). Finally, the president ruled that the retaliation claim, the decision about which positions should be eliminated, and the assertion that the RIF rules were invalid were all beyond the scope of the appeal.

The trial court denied Mr. Hoage's petition for review without a hearing. In its order the court held that Hoage's supervisory responsibilities did not qualify him for the Career Service and that the law would not have permitted UDC to place him in the Career Service. There was substantial evidence in the record, the court said, to support UDC's contention that the "1" on Hoage's personnel form was merely a typographical error. The court accepted the president's finding that if UDC had intended to switch Hoage into the Career Service despite the law's requirements, there would have been a notation to that effect in the "Remarks" section on the form. Additionally, the court found that Hoage had presented no proof of prior grievances between himself and UDC.

Mr. Hoage filed a series of post-hearing motions for relief under various Superior Court Civil Rules, including Rules 59 and 60. After all of those motions were denied, Mr. Hoage noted this appeal.[5]

4. This document was not included in the certified record that was sent to the president of UDC, although Hoage alleged that he took it to the general counsel's office and then to the president's office in an effort to add it to the record. As a result of its absence from the record, it was not considered by the president when he later ruled that Hoage was in the Educational Service.

5. Concurrently with the litigation in the Superior Court, Mr. Hoage sought review by the Office of Employee Appeals ("OEA") because he had per-

sonnel forms which purportedly classified him as a Career Service employee, and because OEA had jurisdiction to hear RIF appeals from Career Service employees. The OEA, however, dismissed Hoage's case with prejudice, relying on the trial court's determination that he was an Educational Service employee, and holding that it was barred by collateral estoppel from "revisiting the question of whether Mr. Hoage [was] in the Career Service."

## II

### A. *Hoage's Employment Status*

Under the CMPA, the Educational Service includes all employees of UDC *except* those employed in the following positions:

(A) Clerical, stenographic, or secretarial positions;

(B) Custodial, building maintenance, building engineer, general maintenance, or general engineering positions;

(C) Bus drivers and other drivers involved in the transportation of persons, equipment, materials or other inventory;

(D) Cooks, dieticians, and other positions involved in direct planning, preparation, service, and conditions of preparation and service of food;

(E) Technicians involved in the operation or maintenance of machinery, vehicles, equipment or the processing of materials and inventory; or

(F) Positions the major duties in which consist of the supervision of employees covered in subparagraphs (A) through (E) of this definition: Provided, however, that this subparagraph shall not be deemed to include heads of academic units at the School of Law or the University of the District of Columbia.

D.C.Code § 1–603.1(6). UDC employees in these six categories are in the Career Service. *See* D.C.Code § 1–608.1(a).

Hoage claims that, because of the duties he performed, his job description placed him in the Career Service as a matter of law. He asserts that he falls under subparagraph (F) of the statutory exceptions quoted above because of his supervisory duties over technicians, clerks, and secretaries. Hoage's four-page job description shows, however, that his duties consisted mainly of procurement planning and the supervision of "approximately nineteen workers engaged in purchasing and procurement activities," as opposed to the supervision of workers in the categories which would bring him within the Career Service. *See* D.C.Code § 1–603.1(6)(A)–(E). According to the job description, Hoage's work involved him in "the planning, development, coordination, execution and direction of the University's procurement and purchas-

ing activities." One of his roles was to "draft[ ] policies and procedures regarding procurement activities as well as the utilization and control of related items and equipment throughout the University." He had signatory authority on purchase orders up to $100,000, and he administered the execution of contracts for "various commodities and services." He was authorized to conduct "surveys or studies involving complex methods, procedures and systems problems that involve procurement activities" and to "establish[ ] different techniques to test proposed new or revised functions, procedures and regulations." He was required to "maintain[ ] liaison with industry representatives to keep abreast of new items on the sources of supply and more effectively carry out procurement functions." His other duties included the preparation of procurement manuals, the review of applicable federal and District of Columbia procurement regulations, and the projection of future procurement needs for the university. The fact that he may have supervised a relatively small number of clerical employees in the course of these activities does not persuade us that he falls within the Career Service as a matter of law, as he maintains.

■ We hold, accordingly, that Mr. Hoage has failed to demonstrate that, under the statute, he was a member of the Career Service as a matter of law. We further hold that the trial court did not err in concluding on this record that the university's determination that he was in the Educational Service was supported by substantial evidence.

### B. *The Two Personnel Forms*

The August 7 and December 2 Form Ones indicated, by the presence of a computer-printed "1" in box 37, that Mr. Hoage's job was in the Career Service rather than in the Educational Service. Hoage claims that if the president of UDC had seen the second Form One, he would have been less likely to view the "1" on the first form as a typographical error. The trial court, which reviewed the same agency record as the president, also did not have access to this form until after it ruled. Mr. Hoage asserts that

he was entitled to have all of the evidence reviewed, not just those parts that UDC saw fit to include in the record.

■ When documents in an agency record suggest more than one possible conclusion, our standard of review operates in favor of the agency finding. "If this court, upon examining the record as a whole, concludes that the Board's findings are supported by substantial evidence, it must accept those findings, even though there may also be substantial evidence in the record to support a contrary finding." *Baumgartner v. Police & Firemen's Retirement & Relief Board,* 527 A.2d 313, 316 (D.C.1987) (citations and footnote omitted). This court "start[s] from the premise that the agency's decision, like the decision of a trial court, is presumed to be correct, so that the burden of demonstrating error is on the appellant or petitioner who challenges the decision." *Cohen v. Rental Housing Comm'n,* 496 A.2d 603, 605 (D.C. 1985) (citation omitted). The petitioner must "present this court with a record sufficient to show affirmatively that error occurred." *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982) (cited in *Cohen,* 496 A.2d at 605). While our rules require the agency to prepare and transmit the record to the court, the ultimate burden of persuasion is on the party challenging the agency's decision, so that it is up to that party to ensure that any gaps in the record are filled. In a case such as this, it is the employee, rather than the university, who has the responsibility to make sure that the president has all the relevant information before making a ruling.[6]

■ The second Form One, dated December 2, was created after the RIF took place and thus did not play any part in the selection of positions to be eliminated. In its order denying Mr. Hoage's motion to disqualify opposing counsel (for, *inter alia,* al-

legedly failing to include the second Form One in the record), the trial court wrote that its earlier ruling on the merits "rested not on the number of forms, but on the reasons why the change in designation to Career Service occurred, and on the reasons why Hoage could not, as a matter of law, have been in the Career Service." We agree with the trial court that the existence of either one or two personnel forms indicating that Hoage was a career employee does not affect the university's determination that Hoage was a member of the Educational Service, so that the absence of the second form from the record is ultimately irrelevant.

There is substantial evidence supporting UDC's conclusion that the "1" on the personnel forms was probably a typographical error, committed by someone who simply typed the wrong number ("1" instead of "2") into a computer, where it remained unnoticed and unchanged. Hoage's personnel forms prior to August 7, 1992, stated that he was in the Educational Service (*i.e.,* they contained a "2" in box 37). His responsibilities did not suddenly change in August 1992; the only change was in the number in box 37. If the university had intended to switch Hoage into the Career Service, there would have been, in addition, a notation to that effect in the "Remarks" section on the personnel form. No such notation appears in the "Remarks" section on the August 7 form; the only remarks on that form indicate a "change in budgetary rule—responsibility center." This suggests to us, as it did to the trial court, that the "1" in box 37 was erroneous and did not affect Mr. Hoage's job classification. We find no basis to conclude that the trial court was wrong.

### C. Due Process

■ Hoage argues that he had a property right in continued employment in his previ-

6. 8 DCMR § 1825.3, published in 39 D.C. Register 4795, 4809 (1992), states:

The request for review [filed by the employee] shall include the following:

(a) A copy of the notice received by the employee;

(b) A statement of the reasons why the employee believes that the reduction in force action taken with respect to the employee was improper. The reasons should in-

clude specific reference to the provision(s) of this chapter or applicable procedure(s) that the employee asserts were violated or improperly implemented in his or her case;

(c) Copies of any relevant documentary evidence supporting the employee's request for review; and

(d) A statement of the corrective action or other relief sought.

ous position at UDC, which could not be taken away from him without due process of law. He cites D.C.Code § 1–617.1(b), which states, "A permanent employee in the Career or Educational Service who is not serving a probationary period ... may be ... removed from the Service only for cause." In a RIF, however, as opposed to a termination for cause, " 'it is by no means obvious that a property interest in continued employment is even implicated.' " *Davis v. University of the District of Columbia,* 603 A.2d 849, 853 (D.C.1992) (quoting *American Federation of Gov't Employees v. Office of Personnel Management,* 261 U.S.App. D.C. 273, 279, 821 F.2d 761, 767 (1987)). We held in *Davis* that, even assuming for the sake of argument that "some property right [was] implicated by the RIF action," due process required only that the affected employee be given notice and an opportunity to be heard—*i.e.,* an opportunity to have his case reviewed by the president of UDC. 603 A.2d at 853 & n. 9.[7] Since those conditions were met here,[8] we conclude that under *Davis* nothing more was required.

More specifically, Mr. Hoage argues that the RIF "exception" to due process does not apply because the RIF in his case was merely a pretext for his retaliatory termination. Citing *Fitzgerald v. Hampton,* 152 U.S.App. D.C. 1, 467 F.2d 755 (1972), he claims that when an employee contests the RIF as a ruse to hide a wrongful firing, the exception for properly executed RIFs does not apply, and the level of protection reverts to that of other employees wrongfully fired. In *Fitzgerald,* the appellant had worked in the Office of the Secretary of the Air Force. After his job was eliminated through a RIF, he alleged that the RIF was really an act of retaliation for testimony he had given before a congressional committee. The court agreed that the case was not "a routine reduction-in-force personnel matter," stating:

Were we to look no further than the *stated* reason for an employee's separation, not only could an agency cavalierly discharge [employees] under the guise of a "reduction-in-force," but under that type of action it could also deprive them of all adverse action procedural rights to which [such employees] are entitled....

*Id.* at 4–5, 467 F.2d at 758–759 (emphasis in original).

In this case, unlike *Fitzgerald,* there was no evidence of Hoage's prior grievances in the agency record, and thus his claim of retaliatory termination must fail for lack of proof. He asserts, for example, that of the eighteen employees in his department, he was the only one selected for removal by the RIF process, but he offers no proof that he was deliberately singled out for discharge. Hoage also claims that his employment status was purposefully reclassified in order to deny him a retirement plan. He does not explain, however, how the rejection of his early retirement request led to what he thinks was a retaliatory RIF termination, and in fact the record shows (see note 3, *supra* ) that the reason for that rejection was unrelated to the RIF. Finally, he contends that the RIF was in retaliation for a previously resolved complaint of discriminatory treatment due to race. Once again, however, there is no evidence in the record of the nature of that complaint or its resolution.

■ In short, Mr. Hoage has failed to present any evidence of retaliation or any other improper implementation of the RIF. He has offered nothing beyond his conclusory assertions that the RIF was a pretext for his retaliatory firing. Thus we hold that his claim of retaliation was properly rejected for lack of evidentiary support.

### D. *The Right to a Hearing*

■ Hoage maintains that both due process and the D.C.Code require us to hold that he should have received a hearing of

---

**7.** The United States District Court has similarly held that employees who have been subject to a RIF "do not enjoy the same due process protection as employees terminated for cause." *Mayfield v. Kelly,* 801 F.Supp. 795, 798 (D.D.C.1992).

**8.** Under applicable regulations, Hoage was given thirty days' advance notice of the RIF. *See* 8

DCMR § 1818.1, published in 39 D.C. Register at 4806. He not only had an opportunity to be heard but took advantage of that opportunity when he appealed from the RIF to the president of the university. *See* 8 DCMR § 1825, published in 39 D.C. Register at 4809–4810.

some sort, either before the president of UDC or before the Superior Court. He cites a number of Supreme Court cases which indicate that the right to a hearing must not be taken lightly. *E.g., Brock v. Roadway Express, Inc.,* 481 U.S. 252, 264, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987); *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Barry v. Barchi,* 443 U.S. 55, 65, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). We agree with that principle, of course, but conclude nevertheless that Mr. Hoage's argument is without merit. As this court held in *Davis v. University of the District of Columbia, supra,* a property interest in continued employment is not implicated in a discharge resulting from a RIF. Because no property interest was affected by the RIF, Mr. Hoage had no right to a hearing, either at the university level or before the trial court. *See Mayfield v. Kelly, supra* note 7, 801 F.Supp. at 798 ("Pre-termination hearings are ... not required in RIF terminations"); *Frazier v. University of the District of Columbia,* 742 F.Supp. 28, 29 (D.D.C.1990) ("Pre-termination hearings are required only for those jobs which have a property interest").

 Hoage cites D.C.Code § 1–1509(b), which states that "[i]n contested cases ... [e]very party shall have the right to present in person or by counsel his case or defense by oral and documentary evidence...." Our decision in *Davis,* however, makes clear that a RIF is not a "contested case," and thus this section of the Code does not apply. "[A]ny matter involving 'the selection or tenure of an officer or employee of the District' is specifically excluded from the definition of the term 'contested case.'" *Davis, supra,* 603 A.2d at 853 n. 10 (citation omitted). We know of no authority that would entitle Hoage to a hearing.[9]

For the foregoing reasons, the order of the trial court is

*Affirmed.*

---

9. The University Rules, moreover, make no provision for a hearing at the agency level. *See* 8 DCMR § 1825, published in 39 D.C. Register at 4809–4810.